614 A.2d 748

**Frank HANRAHAN and Marie Hanrahan, his wife, Appellees,**

**v.**

**AUDUBON BUILDERS, INC. and James Brink and Audubon Brink, his wife, individually, Appellants.**

Superior Court of Pennsylvania.

Argued June 16, 1992.

Filed Sept. 16, 1992.

---

498

Elizabeth A. Erickson, Milford, for appellants.

Charles F. Lieberman, Dist. Atty., Milford, for appellees.

Before ROWLEY, President Judge, and HUDOCK and BROSKY, JJ.

HUDOCK, Judge.

Audubon Builders, Inc., and both James and Audubon Brink, as individuals, (Appellants) appeal from an order of the Court of Common Pleas directing them to pay an amount of $150 per day for each day from February 15, 1988 to December 22, 1988 in liquidated damages resulting from delays in completion of a construction project at the home of Frank and Marie Hanrahan (Appellees). We vacate and remand in part and affirm in part.

The facts and procedural history may be summarized as follows: On November 21, 1987, Appellant James Brink, as president of Appellant Audubon Builders, Inc., entered into a contract for the building of an addition to the home of Appellees. The addition was to be constructed so that Appellee Marie Hanrahan's mother could reside there. The contract price was $37,500. The contract was signed with an addendum in Appellant James Brink's handwriting which stated "all work to be completed by 2–15–88 or contractor agrees to $150/day compensation." The initials "J.L.B." followed the addendum. The contract also stipulated that any changes or modifications to the terms of the contract must be in writing and executed by both parties. The construction work began in December of 1987 and continued sporadically through September of 1988. The project was ultimately completed on December 22, 1988.

Appellees filed a complaint on January 17, 1990, alleging that, despite their demands, certain work had not been completed in a proper and workmanlike manner by Appellants. As a result of the alleged failure of Appellants to complete the contract, Appellees averred that they had expended or will expend at least the sum of $5,561.05. Additionally, Appellees alleged that, as "a direct result of [Appellants'] failure to complete the contract, [Appellees] are entitled to compensation in the amount of $150.00 per day since that time[.]" Complaint at Paragraph 10. Appellants filed an answer,

counterclaim and new matter on March 13, 1990. In their counterclaim and new matter, Appellants alleged that Appellees continued to owe payment for extra work performed on their house in addition to the final payment due under the contract. The parties went to trial on May 13, 1991. On August 13, 1991, the trial court filed an opinion finding in favor of Appellees and awarding them $150 a day in liquidated damages from February 15, 1988, through December 22, 1988. The trial court also found in favor of Appellees and against Appellants on the latter's counterclaim. Thereafter, judgment was entered in favor of Appellees in the amount of $46,650 (representing 311 days at $150 per day).

Appellants raise the following issues on appeal:

1. When a construction project is delayed for reasons clearly beyond the control of Contractor, must those delays be excluded from the time period for calculating delay damages?

2. When a construction project is completed by the Contractor, does the award of delay damages in excess of the total amount of the contract represent punitive damages or forfeiture?

3. Did the Lower Court improperly pierce the corporate veil when there was no evidence of loss to the corporation by commingling of funds or other improper corporate action?

4. Did the Lower Court improperly dismiss Defendants [sic] Counterclaim since Plaintiffs admitted that the extra work was properly performed by Defendants?

Appellants' Brief at p. 3.

■ The first two issues raised by Appellants will be addressed together. Appellants argue that the trial court erred in granting an award of damages that exceeded the original contract amount and that the award did not reflect any consideration for the delays beyond Appellants' control. We agree. Although Appellants fail to cite any cases from this jurisdiction in support of their claims, Appellees, pursuant to Rule 3.3(a)(3) of the Pennsylvania Rules Of Professional Con-

duct,[1] commendably bring to this Court's attention our recent decision in *Holt's Cigar Company v. 222 Liberty Associates,* 404 Pa.Super. 578, 591 A.2d 743 (1991). In *Holt's Cigar,* an owner of a building began renovations. The renovations inconvenienced the business transactions of a commercial tenant. At one point in the renovations, the owner stipulated in a contract with the tenant that if the renovations caused him to close the doors to his business, then the owner would pay liquidated damages in the amount of $500 per day. Subsequently, Holt's Cigar brought suit to recover under this liquidated damages clause, as well as for lost profits. Sitting in equity, the trial court, after making its findings, awarded Holt's Cigar $22,000 under the liquidated damages clause (representing 44 days at the per diem rate of $500 a day), and $53,716 in lost profits.

On appeal, this Court first discussed the purposes of a liquidated damages clause and the distinction between such a clause and a penalty:

> Nearly a century ago our supreme court quite aptly articulated the policy against the enforcement of penalties in actions ex contractu:
>
>> [W]here the breach of agreement admits of compensation, the recovery may be limited to the loss actually sustained, notwithstanding a stipulation for a penalty. [This rule] is founded upon the principle that one party should not be allowed to profit by the default of the other, and that *compensation* and not forfeiture is the equitable rule.
>
> *Kunkel & Jordan v. Wherry,* 189 Pa. 198, 201, 42 A. 112 (1899) (emphasis added). Hence, the rule of validity of a liquidated damages stipulation was held to comport with the general and overarching principle of contract remedies—compensation for damages sustained. *See, e.g., Kothe v.*

1.

**RULE 3.3 CANDOR TOWARD THE TRIBUNAL**

(a) A lawyer shall not knowingly:

\* \* \* \* \* \*

(3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel[.]

*R.C. Taylor Trust,* 280 U.S. 224, 50 S.Ct. 142, 74 L.Ed. 382 (1930) (agreements to pay a fixed sum without any reasonable relation to probable damages for breach "tends to negative any notion that the parties really meant to provide a measure of compensation"); *see also Keck v. Bieber,* 148 Pa. 645, 646, 24 A. 170 (1892); *see generally* Restatement (Second) of Contracts, § 356 comment a. (noting centrality of the principle of compensation). Where a stipulated damages clause is intended as a form of punishment with the purpose, in terrorem, to secure compliance, the principles of compensation are subordinated and the provision must fail as an unenforceable penalty. *See In re Plywood Company of Pennsylvania,* 425 F.2d 151, 155 (3d Cir.1970) ("A penalty is said to be fixed not as a pre-estimate of probable actual damages, but as a punishment, the threat of which is designed to prevent the breach.").

To assist in making this distinction, our courts have employed certain rules of construction that are commonly thought to provide the best indication of the parties' intent.

> The question [of whether stipulation is a penalty or a valid liquidated damages provision] ... is to be determined by the intention of the parties, drawn from the words of the whole contract, examined in the light of its subject-matter and its surroundings; and in this examination we must consider the relation which the sum stipulated bears to the extent of the injury which may be caused by the several breaches provided against, the ease or difficulty of measuring a breach in damages, and such other matters as are legally or necessarily inherent in the transaction.

*Commonwealth v. Musser Forests, Inc.,* 394 Pa. 205, 146 A.2d 714, 717 (1959) (citing *March v. Allabough,* 103 Pa. 335, 341 (1883)); *see also Holmes Electric Protective Co. v. Goldstein,* 147 Pa.Super. 506, 24 A.2d 161, 165 (1942). This court also has cited with approval section 339 of the Restatement (First) of Contracts:

> (1) An Agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and

does not affect the damages recoverable for breach, unless

(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and (b) the harm that is caused by the breach is incapable or very difficult of accurate estimation.

See, e.g., Harris v. Dawson, 239 Pa.Super. 316, 360 A.2d 706 (1976) (citing with approval § 399 [sic] ); Kraft v. Michael, 166 Pa.Super. 57, 70 A.2d 424 (1950) (same).

Holt's Cigar Company v. 222 Liberty Associates, at 586–88, 591 A.2d at 747–48.

In Holt's Cigar, this Court noted that there was no evidence that the chancellor below considered whether the per diem stipulation chosen was a pre-estimate of actual damages anticipated for delayed repairs and if the stipulation was chosen due to the difficulties in proving with certainty the precise extent of actual damages caused by the breach. This Court noted the importance of such considerations by the trial court:

We feel that it is incumbent on the trial judge to address these mixed factual and legal questions in the first instance prior to awarding liquidated damages lest we forget that compensation, not punishment, is the guiding rule. See Keck v. Bieber, 148 Pa. 645, 646, 24 A. 170 (1892) ("where [damages are stipulated to in advance] the court will always look into the question whether this is really liquidated damages or only a penalty, the presumption being that it is the latter"); see also Holmes Electric Protective Co. v. Goldstein, 147 Pa.Super. 506, 24 A.2d 161, 165 (1942) (same). While the final determination of whether a stipulated sum is for liquidated damages or a penalty is one of law for the court to decide, see Laughlin v. Baltalden, Inc., 191 Pa.Super. 611, 159 A.2d 26, 29 (1960), it should be remembered that the pleadings and evidence reduced to findings of fact supply the court with the information necessary to make informed legal conclusions. That the facts and circumstances of each case control suggests the importance of there being detailed findings made below.

*Id.,* 404 Pa.Superior Ct. at 588–89, 591 A.2d at 748. This Court in *Holt's Cigar* then stated its conclusion that the chancellor below had not inquired as to the parties intent with regard to the stipulated provision. From the record, however, this Court found it abundantly clear that "the stipulated sum [was chosen] not as a reasonable forecast of anticipated damages due to delay, but rather solely as a penalty to discourage breach (delay)." *Id.,* 404 Pa.Superior Ct. at 590, 591 A.2d at 749. This Court therefore reversed and vacated the award of liquidated damages, finding it penal in nature and unenforceable on grounds of public policy.[2]

Likewise in the present case, there is a total absence in the trial court opinion of any indication that that court considered whether the $150 a day liquidated damages provision was an actual pre-estimate of probable damages or that actual damages would be impossible or very difficult to calculate. We note that the trial court's opinion includes no discussion; after a brief recitation of the facts, the trial court makes factual findings and, immediately thereafter, conclusions of law. The following conclusions of law are relevant to this inquiry:

### Conclusions of Law

1. The handwritten addendum to the contract between the parties is a liquidated damages clause assessing foreseeable damages to be incurred by [Appellees] by reason of delay.

\*　　\*　　\*　　\*　　\*　　\*

12. [Appellees] incurred inconvenience and additional expense by reason of [Appellants'] failure to complete the structure by February 15, 1988.

\*　　\*　　\*　　\*　　\*　　\*

14. The handwritten addendum fixes an appropriate remedy for the damages incurred by [Appellees].

Trial Court Opinion, at pp. 4–5.

We cannot find support for these conclusions in the record before us. Both Appellee Frank Hanrahan and Appellant

---

**2.** This Court also reversed and vacated the award of lost profits, finding that the complaint pleaded only relief in the form of liquidated damages.

James Brink testified that the intent of the addendum was to provide a penalty. No testimony was presented with regard to the actual costs Appellees incurred by the delay of moving Appellee Marie Hanrahan's mother into Appellees' house. Thus, there is no indication in the record that the $150 a day figure was an accurate pre-estimate of actual damages caused by the breach. Additionally, we find that the absence of such testimony cannot be construed to mean that such damages were not easily determinable.

In short, there is no evidence of record which supports the trial court's conclusions that the addendum assessed foreseeable damages to be incurred by Appellees or fixed an appropriate remedy for damages incurred by Appellees. Indeed, as stated above, Appellees did not present any evidence of the damages they incurred as a result of the delay. Rather, Appellees did testify at length regarding the approximate $5,600 in expenses they incurred by completing work that Appellants did not complete, or did not complete in a workmanlike manner. Thus, our review of the record indicates that the handwritten addendum was agreed to by the parties as a penalty to ensure performance and was not reasonably related to the actual damages caused by the delay in performance. We therefore vacate the judgment entered, based on that provision, as violative of public policy.[3] In addition, we

3. Appellees argue that Appellants have waived any defense of unenforceability of the handwritten addendum because such an affirmative defense was not raised in new matter. *See, gen.* Pa.R.C.P. 1030, 1032, 42 Pa.C.S. (Purdon 1987); *see also Iorfida v. Mary Robert Realty Company, Inc.,* 372 Pa.Super. 170, 539 A.2d 383 (1988), *alloc. den.,* 520 Pa. 576, 549 A.2d 136 (failure to raise an affirmative defense in new matter constitutes a waiver of that defense). Initially, we note that unenforceability of a contract is not an enumerated affirmative defense under Pa.R.C.P. 1030. While our research has failed to uncover an appellate court decision dealing with unenforceability of a contract in this context, we do note that at least one trial court in this Commonwealth has equated unenforceability with illegality. *See, gen., Kleinwaks v. Shiner (No. 1),* 10 Pa.D. & C.2d 301 (1958) (a preliminary objection to complaint, that the contract forming the basis of complaint is unenforceable and against public policy, will be dismissed since under Rule 1030 illegality is an affirmative defense which must be pleaded under new matter). However, we will not consider unenforceability waived in this case because Appellants raised the issue in post-trial motions and the trial court denied these motions without opinion.

remand for a calculation of actual damages caused by Appellants' failure to complete the contract in a proper and workmanlike manner.[4]

■ The third issue raised by Appellants is whether the trial court improperly pierced the corporate veil when there was no showing of loss to the corporation by commingling of funds or other improper action. We find that the trial court did not err. This Court has recently discussed the concept of piercing the corporate veil:

> Piercing the corporate veil is a means of assessing liability for the acts of a corporation against an equity holder in the corporation. The general standard for piercing the corporate veil is as follows:
>
> > The legal fiction that a corporation is a legal entity separate and distinct from its shareholders was designed to serve convenience and justice, ... and will be disregarded whenever justice or public policy require and where rights of innocent parties are not prejudiced nor the theory of the corporate entity rendered useless....
> >
> > We have said that whenever one in control of a corporation uses that control, or uses the corporate assets, to further his or her own personal interests, the fiction of

Thus, we assume that the trial court considered and rejected Appellants' post-trial claim. *See American Association of Meat Processors v. Casualty Reciprocal Exchange*, 527 Pa. 59, 588 A.2d 491 (1991) (assertion of illegality of alleged insurance premium rebate contract was not waived even though it was raised clearly for the first time in post-trial motions where both trial court and this Court considered issue on its merits; failure to raise illegality in pleadings does not result in waiver because the courts will not be used to enforce a contract that violates public policy). Our Supreme Court, in *American Association of Meat Processors, supra*, did not find the defense of illegality of the contract waived because it was violative of a statute enacted "in aid of significant public policies identified by the Pennsylvania legislature." *Id.*, 527 Pa. at 67, 588 A.2d at 495. While in the present case we are not presented with a contract which violates public policy established by the legislature, we are presented with a contract provision which violates the century-old case-law of this Commonwealth which finds penalties equally violative of public policy.

4. Having decided that the handwritten addendum is an unenforceable penalty, we need not address whether the trial court erred in including delays beyond Appellants' control within its award of damages under that clause.

the separate corporate identity may properly be disregarded.

*Ashley v. Ashley,* 482 Pa. 228, 237, 393 A.2d 637, 641 (1978); *Barium Steel Corp. v. Wiley,* 379 Pa. 38, 108 A.2d 336 (1954) (plurality). In deciding whether to pierce the corporate veil, courts are basically concerned with determining if equity requires that the shareholders' traditional insulation from personal liability be disregarded and with ascertaining if the corporate form is a sham, constituting a facade for the operations of the dominant shareholder. *Carpenter's Health and Welfare Fund v. Ambrose,* 727 F.2d 279 (3d Cir.1983). Thus, we inquire, *inter alia,* whether corporate formalities have been observed and corporate records kept, whether officers and directors other than the dominant shareholder himself actually function, and whether the dominant shareholder has used the assets of the corporation as it they were his own. *Id.* at 284; *Ashley,* 482 Pa. at 237, 393 A.2d at 641.

*Village at Camelback Property Owners Assn. Inc. v. Carr,* 371 Pa.Super. 452, 461, 538 A.2d 528, 532–33 (1988), *aff'd,* 524 Pa. 330, 572 A.2d 1 (1990).

Appellants' claim that the absence of evidence of loss to the corporation by commingling of funds or other improper corporate action should prevent piercing of the corporate veil is unpersuasive. "[T]he corporate existence can be disregarded without a specific showing of fraud." *Id.* at 462, 538 A.2d at 533. As this Court has stated:

Appellant argues that the corporate veil cannot be pierced unless the court makes a specific finding that he used his professional corporation to commit fraud, illegality or wrongdoing. This is a statement frequently made in the decided cases.... Appellant's reliance on this general language, however, fails to acknowledge the scope of the rule which permits the separate corporate entity to be disregarded whenever it is necessary to avoid injustice.

*Rinck v. Rinck,* 363 Pa.Super. 593, 597, 526 A.2d 1221, 1223 (1987). It is not the relationship between the shareholder and the corporation which is at issue. Rather, the issue is whether

Appellants James and Audubon Brink should be held personally liable for damages allegedly incurred by Appellees.

A review of the record reveals that while the Appellant Audubon Builders did indeed hold its annual meeting over the previous four years and ratified the acts of its shareholders, Appellants James and Audubon Brink treated the corporation as a proprietorship. More importantly, however, is the abundance of testimony concerning the commingling of personal and corporate funds. On cross-examination, Appellant Audubon Brink testified that corporate funds were utilized, in the form of direct payments from the corporation's account, for the shareholders' personal expenses including cable television for their home, electric bills for their home, insurance for personal coverage and coverage for other businesses run by the shareholders which were not related to the corporation, jewelry for personal use, costs associated with their wedding, personal mortgage payments and their son's private school tuition. Evidence was also produced that Appellees wrote a check for partial payment on the contract, in the amount of $11,153 to Appellant Audubon Brink.

Considering these circumstances, we find that the trial court properly pierced the corporate veil and held Appellants James and Audubon Brink personally liable for damages under the contract.[5] Thus, on remand, after calculating the amount of damages due Appellees, the trial court is directed to enter this amount as a judgment against Appellants James and Audubon Brink, individually, as well as against Appellant Audubon Builders, Inc.

Appellant's final claim on appeal is that the trial court erred in denying the counterclaim. Appellants' entire argument on this claim is as follows:

**5.** The trial court also found, and Appellees assert on appeal, that Audubon Builders, Inc., was not incorporated on the day the contract was executed. This finding and assertion is in error. *See, gen.* 15 P.S. § 1207 (Purdon 1967) (repealed) (upon the filing of the articles of incorporation by the Department of State, the corporate existence begins).

It is uncontroverted that all the extras were provided. (R. 277a). Detailed Findings of Fact were filed by [Appellants] concerning these issues. (R. 278a).

Appellants' Brief at p. 32. We need not address this issue because it is not adequately developed on appeal. *Swift v. Milner*, 296 Pa.Super. 463, 442 A.2d 1144 (1982). However, we will address it in the interest of completeness. In essence, Appellants claim that the trial court's verdict with respect to the counterclaim was against the weight of the evidence. In dealing with issues that involve the weight of the evidence, this Court will not grant a new trial unless the verdict is so contrary to the evidence as to shock one's sense of justice. *Giovanetti v. Johns–Manville Corp.*, 372 Pa.Super. 431, 539 A.2d 871 (1988). We do not find these circumstances to exist in the present case.

At trial, Appellant James Brink testified that all of the extra work performed on the Appellees' home was requested by Appellees. Admittedly, however, Appellants could not produce any written change orders which were required for modifications in the specifications of the contract. Conversely, Appellee Frank Hanrahan testified that such work was performed either to cover up mistakes made by Appellants, or simply a matter of Appellants style or custom. With one exception, Appellee Frank Hanrahan denied that any of the "extra work" was requested by he and/or his wife. In essence, Appellants claim that their testimony was more credible than that presented by Appellees. This credibility determination was for the trial court as fact-finder, which is free to believe all, some or none of the evidence, to make credibility determinations, and to resolve conflicts in the evidence. *Gemini Equipment Co. v. Pennsy Supply, Inc.*, 407 Pa.Super. 404, 595 A.2d 1211 (1991). Upon review of the record, we find the verdict on Appellants' counterclaim does not shock this Court's sense of justice.

Judgment affirmed in part and vacated in part. The matter is remanded to the trial court for calculation of actual damages. Jurisdiction relinquished.