James W. **CRABTREE,** Plaintiff,

v.

**ACADEMY LIFE INS. CO.,** Defendant.

Civ. A. No. 94–3789.

United States District Court,
E.D. Pennsylvania.

Feb. 7, 1995.

James J. Binns, Philadelphia, PA, for plaintiff.

Sandra L. Ykema, Drinker, Biddle & Reath, Philadelphia, PA, for defendant.

### MEMORANDUM

LOWELL A. REED, Jr., District Judge.

Plaintiff James W. Crabtree has brought this breach of contract and quantum meruit action against defendant Academy Life Ins. Co. in order to recover attorney fees allegedly owed him by defendant. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332 as the parties are of diverse citizenship and the amount in controversy is in excess of $50,000 exclusive of interest and costs.

Currently before me is the motion of defendant to dismiss the complaint, or, in the

alternative, for summary judgment (Document No. 4). For the following reasons, the motion will be denied.

## I. FACTUAL BACKGROUND [1]

Plaintiff, an attorney licensed to practice law in the state of North Carolina, was retained by defendant in August 1984 at plaintiff's then standard billing rate of $150.00 per hour. In January 1985, defendant asked and plaintiff agreed that (1) plaintiff would be paid at a lower billing rate of $90.00 per hour and (2) if plaintiff was ever terminated he would receive deferred compensation on all the hours billed since February 1985. The deferred compensation was to be calculated by multiplying the number of hours billed by the difference between plaintiff's standard billing rate at the time of termination and the lower billing rate of $90.00 per hour.

Approximately eight years later, in January 1993, Capital Holding Corporation purchased a 100% interest in Academy Life Insurance Group, Inc., of which defendant was a wholly owned subsidiary. At the same time as the change in ownership, defendant and plaintiff agreed that December 31, 1992 would be the last date on which bills would be calculated for purposes of plaintiff's deferred compensation. On February 4, 1994, defendant terminated plaintiff. Defendant has since refused to pay plaintiff the compensation agreed to. As of December 31, 1992 and February 4, 1994, plaintiff's standard billing rate was $185.00 per hour.

## II. DISCUSSION

Before getting to the substance of defendant's arguments for dismissal, it is necessary to address two preliminary matters. These matters are (1) whether the instant motion should be treated as a motion to dismiss or as a motion for summary judgment and (2) the choice of law applicable to the instant action.

### A. *Conversion of a Motion to Dismiss Into a Motion for Summary Judgment*

Defendant has labelled its motion, in the alternative, as a motion for summary judg-

ment, and both parties have submitted materials outside of the original complaint. Under Fed.R.Civ.P. 12(b), a motion to dismiss for failure to state a claim upon which relief can be granted can be converted into a motion for summary judgment if the court considers matters outside of the complaint in deciding the motion. The decision regarding whether to make this conversion is within the discretion of this Court. *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366 at 491 (1990)).

■ After examining the materials submitted by the parties, I find that they provide, at best, a very incomplete picture of the facts critical to the instant action. Therefore, I will decline the parties' invitation to convert the instant motion into a motion for summary judgment, and I will exclude from my consideration any materials outside of the complaint for the purposes of deciding the instant motion. Since this motion will be treated solely as a motion to dismiss, I "must accept as true all of the factual allegations in the complaint as well as the reasonable inferences that can be drawn from them, and dismissal is appropriate only if no relief could be granted under any set of facts which could be proved." *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255 (3d Cir. 1994) (citation omitted).

### B. *Choice of Law*

■ Federal courts must apply the choice of law rules of the states in which they sit. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). Pennsylvania has adopted a choice of law methodology which combines contacts analysis and interest analysis. *Carrick v. Zurich–American Ins. Group*, 14 F.3d 907, 909–10 (3d Cir.1994); *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964). This methodology ap-

---

1. This factual background is based on plaintiff's well-pleaded factual allegations, construed in the light most favorable to plaintiff, as required

when considering a motion to dismiss. *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255 (3d Cir.1994).

plies to breach of contract actions. *Compagnie des Bauxites de Guinee v. Argonaut–Midwest Ins. Co.,* 880 F.2d 685, 688 n. 9 (3d Cir.1989); *Hughes v. Prudential Lines, Inc.,* 425 Pa.Super. 262, 624 A.2d 1063, 1066 n. 2 (1993), *appeal denied,* 535 Pa. 647, 633 A.2d 152 (1993). Courts applying Pennsylvania choice of law rules have often looked to the Restatement (Second) of Conflict of Laws for guidance. *Compagnie des Bauxites,* 880 F.2d at 689; *Griffith,* 203 A.2d at 802–03. Section 188 of the Restatement lists the following contacts as particularly relevant to an action based upon a contract:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

Restatement (Second) of Conflict of Laws § 188 (1969). In addition, section 196 of the Restatement, which applies to contracts for the rendition of services, states that the law of the state "where the contract requires that the services, or a major portion of the services, be rendered" is the applicable law. *Id.* § 196. In the instant case, the complaint states that plaintiff is a citizen of the state of North Carolina and is duly licensed to practice law in that state, that the defendant is a corporation founded under the laws of the state of Kansas with its principal place of business located in the state of Pennsylvania, and that "a substantial part of the events and omissions giving rise to the claim occurred" in the state of Pennsylvania. Complaint ¶¶ 1, 2, 4, 5.

■ Turning first to the issue of which state has its interests most strongly invoked by the instant action, it is necessary to examine defendant's arguments for dismissing plaintiff's complaint. Defendant argues that the breach of contract claim must be dismissed because the "deferred compensation"

provision of the alleged contract is void as against the public policies of (1) allowing clients to freely terminate an attorney-client relationship and (2) not allowing penalty clauses in contracts.[2] The first public policy is designed to protect clients, thereby implicating most strongly the interests of the state where the client resides or does business; in the instant case, that state is Pennsylvania. The second public policy concern is designed to encourage contracting and to protect the parties to a contract, thereby implicating the state where the contract was negotiated, the state where the contract was made, and the state(s) where the parties reside. While the parties in the instant case reside in different states, North Carolina and Pennsylvania, the only information in the complaint that indicates where the contract may have been negotiated or made points to Pennsylvania. Therefore, the state whose interests are most strongly invoked in the instant action is Pennsylvania.

Turning to the contacts with various states, it is apparent that the contacts also favor the application of Pennsylvania law. While the parties are from different states, the complaint alleges that defendant has its principle place of business in Pennsylvania and that "a substantial part of the events and omissions" involved in the instant action occurred in Pennsylvania. The latter allegation implies that a substantial part of the contacts relevant to the instant action, such as where the contract was negotiated, where the contract was made, and where the contract was performed, were with Pennsylvania. Therefore, I conclude that the applicable law is the law of Pennsylvania. As this conclusion is based on the relatively sparse facts alleged in the complaint, it is made only for the purposes of deciding the instant motion to dismiss. As more facts come to light, the Court may reexamine the choice of law question during later stages of the litigation.

### C. *Right of a Client to Terminate an Attorney–Client Relationship*

■ It is undisputed that under Pennsylvania law a client has the absolute right to

---

**2.** Because plaintiff's quantum meruit claim is being made in the alternate to his breach of contract claim, and because I find that his breach of contract claim survives the motion of

defendant to dismiss, I need not reach the issue of the applicable law for the quantum meruit claim.

terminate an attorney-client relationship regardless of the contractual arrangement between the client and the attorney. *Richette v. Solomon,* 410 Pa. 6, 187 A.2d 910, 917 (1963); *Sundheim v. Beaver County Building & Loan Ass'n,* 140 Pa.Super. 529, 14 A.2d 349, 351 (1940); *Hiscott and Robinson v. King,* 426 Pa.Super. 338, 626 A.2d 1235, 1237 (1993), *appeal denied,* 537 Pa. 641, 644 A.2d 163 (1994); *Novinger v. E.I. DuPont de Nemours & Co.,* 809 F.2d 212, 218 (3d Cir. 1987). However, the attorney is due, upon termination, the fair value of the services previously rendered. *Powers v. Rich,* 184 Pa. 325, 39 A. 62 (1898); *Hiscott and Robinson,* 626 A.2d at 1237; *Novinger,* 809 F.2d at 218.

■ The Supreme Court of Pennsylvania, or for that matter any Pennsylvania court, has yet to face the issue presented by this case, that is whether a client and attorney may enter into an agreement that defers payment of a substantial portion of the attorney's fees until the date of the termination of the attorney-client relationship. When the highest court of a state has not ruled on an issue of state law, a federal court is required to predict how that court would rule. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782–83, 18 L.Ed.2d 886 (1967).

■ Having reviewed the relevant Pennsylvania law, I find that I need not go beyond the cases already cited in order to predict how the Supreme Court of Pennsylvania would decide the issue facing this Court. These cases make it clear that while an attorney has no right to prevent a client from terminating an attorney-client relationship, and therefore, impliedly, an attorney has no right to attach a financial penalty to such a termination, a client has an obligation to pay an attorney for all services rendered prior to the termination, even if this results in a substantial bill for the client as a result of the termination. For example, one court applying Pennsylvania law found that when a client enters into successive 30% or less contingent fee attorney-client relationships, and the second attorney carries the matter to a successfully resolution and so is owed the negotiated contingent fee percentage, the client also owes the first attorney the value of the services rendered by that attorney even if this increases the total attorney fees to almost 40% of the recovery. *Mulholland v. Kerns,* 822 F.Supp. 1161, 1171–72 (E.D.Pa. 1993). While this case is not completely analogous to the instant case, it emphasizes the fact that under Pennsylvania law the mere fact that a client may suffer adversely from exercising his or her right to terminate the attorney-client relationship is not enough to vitiate the contract and thus eliminate that financial burden as long as that burden is related to services that have already been rendered. Therefore, I find that under Pennsylvania law, reading the complaint in the light most favorable to plaintiff, the "deferred compensation" of the alleged contract between the parties does not contravene the public policy of allowing client's to freely terminate attorney-client relationships.

### D. *Penalty Clause*

■ Defendant's second argument is that under regular contract principles, the deferred compensation provision violates the public policy against penalty clauses in contracts. It is undisputed that under Pennsylvania law, while liquidated damage provisions that estimate the probable harm from a breach of contract are allowed under certain circumstances, penalty clauses that bear no or little relation to that probable harm are void and unenforceable. *Kunkle v. Wherry,* 189 Pa. 198, 42 A. 112 (1899); *Hanrahan v. Audubon Builders, Inc.,* 418 Pa.Super. 497, 614 A.2d 748, 750 (1992). The problem with the application of this principle to the instant case is that the "damages" invoked by the termination of the contract at issue here were not intended by the parties to be either liquidated damages or a penalty for a breach of contract. Rather, the agreed damages simply constituted previously owed compensation whose payment had been deferred until the time that defendant exercised its right to end the contractual relationship. Reading the complaint in the light most favorable to plaintiff, the parties intent was not to penalize or compensate for any possible breach of contract but was instead to simply defer payment on services rendered in the past.

Therefore, I find that the "deferred compensation" provision of the alleged contract is not a penalty clause and therefore is enforceable.

### E. *Quantum Meruit Claim*

I do not reach defendant's arguments for dismissing the quantum meruit claim for several reasons. First, since the claim is made for the exact same amount as the breach of contract claim, and is based on the same services rendered as the breach of contract claim, it must have been made by plaintiff as an alternate claim to plaintiff's breach of contract claim. *See* Complaint ¶ 17, 20. Since I have found that plaintiff's breach of contract claim will not be dismissed at this time, it is unnecessary to discuss plaintiff's alternate claim. Second, defendant's arguments for dismissal of the quantum meruit claim rest either on materials outside of the complaint, materials which I have excluded from consideration for the purposes of deciding the instant motion, or on the argument that the "deferred compensation" provision of the alleged contract is invalid, an argument which I have rejected at this juncture. Therefore, defendant's motion to dismiss will also be denied as it applies to plaintiff's quantum meruit claim.

## III. CONCLUSION

For the foregoing reasons, the motion of defendant to dismiss the complaint, or, in the alternative, for summary judgment, will be treated as a motion to dismiss and will be denied.

An appropriate Order follows.

### ORDER

**AND NOW,** this 7th day of February, 1995, upon consideration of the motion of defendant Academy Life Ins. Co. to dismiss the complaint, or, in the alternative, for summary judgment (Document No. 4), the response of plaintiff thereto, and the further reply of defendant, for the reasons set forth in the foregoing memorandum, it is hereby **ORDERED** that the motion is **DENIED.**