**Dickson v. Ace Construction
and Development Company**

C.P. of Montgomery County, no. 93-09259.

*James R. Lynch,* for appellee.
*Seymour Lackier,* for appellant.

CARPENTER, *J.,* May 17, 1995—

### FACTS

The appellant, Stephen J. Reichert, appeals to the Pennsylvania Superior Court, from a ruling made by this court on March 10, 1995. This ruling determined that the corporate veil should be pierced and the appellant, who is the corporation's sole shareholder, should be held personally liable for the faulty repair work performed on the appellee's roof by the appellant.

The genesis of this dispute was on July 8, 1991, when Nancy Dickson hired the appellant and his company, Ace Construction and Development Co., to perform roofing repairs to her house. The work progressed through the summer and at the completion of the job the appellant was paid $10,927. By early fall however, the Dicksons began to have problems with leaking and shingles falling off the roof. A series of attempts were made throughout the following year to repair the roof, but the work was never completed to the satisfaction of the Dicksons. As a result the Dicksons filed a complaint in the District Court in Delaware County. The district justice ruled in their favor, and awarded them $4,000 plus costs. At this point the Dicksons attempted to execute on the judgment but they were unable to locate the appellant[1] in Delaware County, so they transferred the judgment to Montgomery County. In Montgomery County, District Justice Walter F. Gadzicki, Jr., placed a lien on a truck registered to the appellant. The appellant filed an objection to the lien, asserting that he was the registered owner of the truck, not the defendant corporation. This objection was denied, and the appellant subsequently filed an objection before this court.

By agreement both parties appeared at a hearing on March 10, 1995, at which time it would be determined whether or not the Dicksons would be allowed to pierce the corporate veil. After evidence was presented by both parties, this court overruled the appellant's statement of objections and found that it was appropriate in this situation to pierce the corporate veil and that

1. The appellee testified that she sent a letter to the appellant's P.O. box, but that it was returned because the addressee had moved and left no forwarding address. (Note of the March 10, 1995 hearing, p. 8.)

the personal property of the appellant could be levied upon.

## ISSUES

(1) *Whether This Court Properly Found That the Appellees Could Pierce the Corporate Veil of the Company Known As Ace Construction and Development Co. and As a Result Allow the Appellees To Reach the Personal Assets of the Appellant?*

The appellant in his concise statement of matters complained of on appeal asserts that this court erred by ruling that the appellees could pierce the corporate veil and execute a judgment against the appellant's assets. To support his assertion appellant relies on several facts introduced at the March 10, 1995, hearing. Namely, that Ace Construction had a separate bank account, that it had company stationery and letterhead, that it advertised as a corporation, and that the contract between the appellant and the appellees always referred to Ace Construction as a corporation.

We believe that this assertion lacks merit considering the standards recognized in this Commonwealth when seeking to pierce the corporate veil. The Pennsylvania Superior Court, in the case of *Hanrahan v. Audubon Builders Inc.,* 418 Pa. Super. 497, 614 A.2d 748 (1992) stated:

"In deciding whether to pierce the corporate veil, courts are basically concerned with determining if equity requires that the shareholders' traditional insulation from personal liability be disregarded and with ascertaining if the corporate form is a sham, constituting a facade for the operations of the dominant shareholder." (citations omitted) *Id.* at 507, 614 A.2d at 753.

The result of this holding is that Pennsylvania differs from other jurisdictions in that there is no formal two or three pronged inquiry to be used when determining whether or not to pierce the corporate veil. Rather, this Commonwealth follows an approach that places emphasis on a more equity-based analysis and therefore no single factor is dispositive, but it becomes a cumulative test. In the case of *Village at Camelback v. Carr,* 371 Pa. Super. 452, 538 A.2d 528 (1988), the Pennsylvania Superior Court in setting out a general standard for piercing the corporate veil stated:

"The legal fiction that a corporation is a legal entity separate and distinct from its shareholders was designed to serve convenience and justice, . . . and will be disregarded whenever justice or public policy require and where rights of innocent parties are not prejudiced nor the theory of the corporate entity rendered useless. . . . We have said that whenever one in control of a corporation uses that control, or uses the corporate assets, to further his . . . own personal interests, the fiction of the separate corporate identity may properly be disregarded." *Id.* at 461, 538 A.2d at 533.

In applying the above standard the Superior Court directs its inquiry to whether "corporate formalities" have been maintained. For example, is the corporation properly capitalized, have corporate records been kept, do the officers and directors control the corporation, are there regular board or shareholder meetings, does the corporation pay dividends to the shareholders, and are the assets of the corporation commingled with the assets of the shareholders, or directors?

A review of the record shows that several of these corporate formalities were addressed at the March 10, 1995 hearing and were found to be lacking. At that

hearing the appellee was asked about the method by which she paid the appellant.

"Q. Did Mr. Reichert give you any checks?

"A. I paid him four checks, three of which he asked that I make them out to Stephen Reichert.

"Q. The checks were made personally to Stephen Reichert?

"A. Yes." (Notes of the March 10, 1995 hearing, pp. 10-11.)

In response to the appellee's testimony the appellant testified that he maintained a separate bank account for Ace Construction, and that even though the checks were made out to him personally, he deposited them into the corporate account.

"Mr. Lynch: this is not a check from Ace. This is a check to Ace . . .

"Q. It was signed by Stephen Reichert. Did that go through your personal account?

"A. As I said before, no

"Q. It went through your corporate account, didn't it?

"A. To the best of my knowledge." (Notes of the March 10, 1995 hearing, p. 49.)

In an effort to support this testimony the appellant introduced the bank statement for the Ace Construction account. This statement showed that there was activity on the account but the statement covered December 31, 1992, through January 29, 1993, (defendant's exhibit D-6) and the checks from the appellee were written in the summer of 1993. Therefore, we had no credible evidence before us that supported the claim that the appellant did not commingle his personal and the corporate funds.

There was also testimony that the appellant's truck that was used for business purposes, and had the business

name written on it, was registered in the appellant's name.

"Q. Is the truck in the corporate name? You have already indicated the truck isn't; is that correct?

"A. Correct.

"Q. The truck is not in the corporate name?

"A. Correct.

"Q. What's written on your truck, Mr. Reichert? Is Ace Construction written on the truck?

"A. It was yes." (Notes of the March 10, 1995 hearing, p. 50.)

Additionally, the appellant himself testified that he was the sole shareholder, that he was the only corporate director, and that he was not sure when the corporation was formed. (Notes of the March 10, 1995 hearing, pp. 37-38.) He also stated that he did not have any corporate books or minutes of any directors' meetings with him.[2]

"Q. Do you have corporate minutes with you? Can you show us the corporate minutes at this time?

"A. No, I cannot. . . .

"Q. Do you have any minutes—any evidence of minutes, any evidence of a board of directors, that you could present to the court, to show that you are operating as a corporation presently, . . .

"A. I answered that, 'No,' already." (Notes of the March 10, 1995 hearing, pp. 51-52.)

We found this fact especially significant considering that the nature of the hearing was to determine whether or not to pierce the corporate veil and the presence of the corporate books or the minutes of board meetings would have been very probative evidence of essential corporate formalities.

---

2. We do not believe that any corporate records of meetings ever existed.

Therefore, even though the appellant had presented some minimal indicia that Ace Construction functioned as a corporation, there was ample evidence to support our finding that the corporation was a mere alter ego of its sole shareholder. This determination is buttressed by the fact that we found the appellees' testimony to be more credible than the appellant's.[3] It is well settled that it is the function of the fact-finder to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. *Commonwealth v. Campbell*, 425 Pa. Super. 514, 625 A.2d 1215 (1993). Thus, the trial court, sitting as fact-finder, is free to accept all, part, or none of a witness's testimony. *Commonwealth v. Strutt*, 425 Pa. Super. 95, 624 A.2d 162 (1993). As a result, it was our job as the trial court, to view the witnesses, to determine their credibility, and to ultimately balance the equities.

Here the appellee paid a just and reasonable compensation for roofing work, performed by the appellant, that was defective. Appellant tried to hide behind his sham corporation in order to avoid liability for faulty work he performed. Accordingly, we believe that the just result was to pierce the corporate veil.

## CONCLUSION

Based on the foregoing analysis, this court's ruling entered on March 10, 1995, determining that the corporate veil of Ace Construction could be pierced and that the personal assets of the appellant could be used to satisfy a judgment against the corporation should be affirmed.

---

3. Not only did the appellant fail to bring any corporate records to the hearing, he also tried to mislead the court by introducing bank records that did not cover the relevant time period.