Medical Wellness Associates P.C. v. Heithaus

C.P. of Westmoreland County, no. 6500 of 2000.

*Charles Artz* and *Timothy Fedele,* for plaintiffs.
*Eugene Berry,* for defendant.

CARUSO, *J.,* February 13, 2001—This matter is before the court for adjudication as the result of a complaint in equity filed on October 17, 2000, containing six counts. On October 20, 2000, the plaintiff filed a motion for preliminary or special injunction. The court scheduled a hearing on said motion for November 3, 2000. At the request of Eugene G. Berry, Esq., counsel for the defendant, the hearing of November 3, 2000, was continued by order of court dated November 1, 2000, to the date of November 28, 2000. The order of court of November 1, 2000, also directed that upon agreement of counsel the hearing to be held on November 28, 2000, would be for a final adjudication of a permanent injunction. The hearing scheduled for November 28, 2000, was once again continued but this time at the request of counsel for the plaintiff. The hearing was continued to January 4, 2001. On December 12, 2000, the defendant filed an answer, new matter, and counterclaim. Thereafter, hearings were held on January 4, 2001; January 19, 2001; and January 30, 2001. After the taking of said testimony, the court enters the following adjudication.

4

## ISSUES

(1) Is the restrictive covenant contained in the employment agreement dated October 23, 1994, as amended by the amendments thereto of July 22, 1996, and October 22, 1996, supported by adequate consideration?

(2) Is the restrictive covenant not to compete reasonable in terms of time and geographical restriction?

(3) Is the plaintiff/employer entitled to injunctive relief and/or damages for breach of the restrictive covenant?

(4) Did the defendant misappropriate "confidential information" in violation of paragraph 19(d) of the said employment agreement as amended?

(5) Is the plaintiff/employer entitled to injunctive relief as a result of said violation?

(6) Did the defendant breach the said employment agreement as amended, specifically the provisions set forth in paragraphs 19(b) and 19(d)?

(7) Is the plaintiff/employer entitled to liquidated damages in the amount of $25,000, together with attorney's fees and costs of suit pursuant to paragraph 19(f) of said agreement as amended?

(8) Is the plaintiff/employer entitled to unliquidated damages and/or punitive damages?

(9) Did the defendant intentionally interfere with the doctor-patient contract and relationships?

(10) Is the plaintiff/employer entitled to damages for intentional interference with the doctor-patients contracts and relationships?

(11) Did the plaintiff/employer engage in fraud?

(12) Does the plaintiff/employer have "unclean hands" so as to bar plaintiff's entitlement to equitable remedies?

(13) Did the plaintiff/employer unlawfully and unjustly terminate the defendant for his religious beliefs in direct contravention of his civil rights under the state and federal constitutions?

(14) Did plaintiff/employer wrongfully and unjustly terminate the defendant without just cause in violation and in breach of the said employment agreement as amended?

(15) Did the plaintiff/employer methodically work to reduce the defendant's patient load causing his productivity to decline and thus constructively discharge the defendant?

(16) Did the plaintiff/employer breach a covenant of good faith and fair dealing implied in said employment agreement, as amended, by engaging in a continuing pattern of harassment of the defendant and by failing to pay for reports generated by the defendant?

(17) Is the defendant entitled to money damages on his counterclaim?

## FINDINGS OF FACT

(1) The plaintiff is Medical Wellness Associates P.C., a Pennsylvania corporation, with offices located at 91 Lincoln Way East, Jeannette, Westmoreland County, Pennsylvania.

(2) Chiropractic Nutritional Associates P.C., was the corporate predecessor to MWA. On or about July 23, 1996, CNA merged with and into MWA.

(3) The defendant is Richard J. Heithaus D.C., and has established an office at 533 Washington Avenue, Suite 204, Bridgeville, Allegheny County, Pennsylvania.

(4) The defendant has executed a series of employment agreements with CNA and MWA. The first was executed on October 23, 1991, and had a term of one year. The second was entered into on October 23, 1992, and had a term of two years. The third employment agreement was entered into on October 23, 1994, and had a term of two years.

(5) The defendant executed an addendum to the 1994 employment contract under which addendum the defendant's rights, duties, and obligations were assigned to MWA, the surviving entity of the CNA-MWA merger. This addendum was effective July 22, 1996.

(6) The defendant executed an amendment to the 1994 employment contract with MWA which was effective October 22, 1996. In this amendment, MWA increased the term of the contract, the compensation to be paid to the defendant, the amount of the health insurance premium to be paid by the employer and the amount of vacation to which the defendant was entitled each year.

(7) The defendant executed the employment agreement dated October 23, 1991, on the same date he began employment with CNA which is MWA's corporate predecessor. This first agreement terminated on Octo-

ber 23, 1992. The defendant entered into a new and second employment agreement with CNA on October 23, 1992. This second employment agreement terminated on October 23, 1994.

On October 23, 1994, the defendant entered into a new and subsequent employment agreement with CNA. This agreement was to have a term of two years. Thereafter on July 22, 1996, the defendant executed an amendment to the employment agreement wherein the defendant acknowledged that the rights and responsibilities under the agreement were to be assigned by CNA to MWA effective July 22, 1996. This amendment provided that all other terms and conditions in the agreement remain the same and unaffected by the amendment. Thereafter on October 22, 1996, one day prior to the expiration of the term of the employment agreement dated October 23, 1994, the defendant executed an amendment to the employment agreement wherein, in pertinent part, the term of the employment agreement of October 23, 1994, was extended for a period through and including October 22, 2001. In addition, the compensation of the defendant was increased, as well as the period of vacation to which the defendant was entitled to each contract year. Also, the employer agreed to pay an additional $800 towards the defendant's hospitalization insurance. All other terms and conditions in the agreement of October 23, 1994, were to remain the same and unaffected by this amendment.

(8) Paragraphs 19(b)(1) and (3) of the employment agreement, as amended, prohibited defendant from practicing chiropractic within a 45-mile radius of MWA's

office for two years following the termination of his employment with MWA. MWA terminated the defendant's employment for cause on May 27, 2000.

(9) The defendant opened a practice in the month of July in the year 2000 at 533 Washington Avenue, Suite 204, Bridgeville, Pennsylvania.

(10) The straight-line distance between MWA's offices in Jeannette and the defendant's location in Bridgeville is 26.775 miles as established by Richard F. Territ, a registered professional land surveyor.

(11) The defendant is practicing chiropractic within the 45-mile radius and two-year restriction prohibited by section 19(b)(1) and (3) of the employment agreement of October 23, 1994, as amended.

(12) The defendant caused to be published in the Greensburg and Pittsburgh editions of the *Tribune Review* as well as the *Almanac,* a local newspaper in Bridgeville, Pennsylvania, an advertisement of the opening of his practice and caused the same to be circulated within the geographic and time limitations contained in the restrictive covenant.

(13) The defendant has also broadcast a weekly one-hour radio program entitled "Health Matters" on WKHB 620 AM located in Greensburg. This broadcasting began in September of 2000 within the geographic and time limitations contained in the restrictive covenant. During said broadcast the defendant invites patients to seek professional treatment and care at his Bridgeville location.

(14) The defendant has also presented three seminars and public informational events in September, Oc-

tober, and November 2000 in Allegheny County at which he distributed business cards and fliers promoting his practice at the Bridgeville location.

(15) The noncompetition covenants under section 19(b)(1) preclude the defendant from soliciting MWA's patients. The advertisements, radio program, and seminar presentations constituted solicitation of potential patients within the geographic and time limitations in the subject restrictive covenant and specifically violated paragraph 19(b)(1).

(16) In paragraph 19(b)(4), the defendant agreed that he would not provide, within a 45-mile radius of MWA, professional chiropractic, rehabilitation or nutritional services to any customer of the MWA with whom or with which he was a principal contact at any time during his employment with the employer. The defendant has treated at least 41 patients he had previously treated while at MWA.

(17) Paragraph two of the employment agreement dated October 23, 1994, as amended, provided that the employer may terminate the agreement at any time during the term of that agreement with or without cause, for any or no reason, by giving 30-days written notice of termination to the employee. This paragraph also provided, however, that it would not prohibit the employer from immediately terminating employees' employment at any time for "cause" pursuant to paragraphs 18 and 19 of the agreement. Paragraph 18(g) of the employment contract permits MWA to terminate the defendant immediately for cause. Paragraph 19(c) of the said employment agreement defines cause to include the

defendant's failure or refusal to perform his duties or obligations under the contract; defendant's failure to correct, to MWA's satisfaction, within 15 days after written notice, any deficiency of his performance under the agreement; theft or abuse of MWA's property or the property of its patients; and violation of MWA's rules, policies, procedures, or practices.

(18) MWA provided written notice to the defendant that his efforts to recruit new patients were inadequate; that his productivity in terms of total patient visits and revenues generated was insufficient; and that he was habitually late for work causing problems with MWA's patients.

(19) MWA has proven by a preponderance of the evidence that the defendant was habitually tardy and that his productivity was below acceptable levels consistent with MWA's policies and procedures.

(20) MWA had established a written policy, that was distributed to all employees, including the defendant, that prohibited use of a specific copying machine. The defendant violated this policy on several occasions after it was published on April 5, 2000, by nevertheless copying patient files and records by using said copying machine.

(21) Paragraph 19(d) of the employment agreement provides that the defendant was not to remove any writings or materials containing "confidential information" from the employer's premises or possession and that he was not to use such confidential information for his own benefit. The defendant violated this prohibition by copying and taking from MWA's premises specific patient information and records.

(22) Following the termination of the defendant by MWA, for cause, on May 27, 2000, there was no serious impairment of the ability of MWA to deliver medical care to the patients of the defendant. MWA is a group practice consisting of eight medical or chiropractic physicians. Further, given the number of chiropractors working within the geographic area covered by restrictive covenant, it appears that patients treated by the defendant while employed at MWA would have not have had any problem accessing available chiropractic and nutritional care within that geographical limitation.

(23) The practice of MWA is local and regional and therefore draws patients from numerous counties surrounding Westmoreland County and from regions and jurisdictions beyond Pennsylvania, thus the market for patients extends up to and well beyond the 45-mile geographic limitation contained in the restrictive covenant.

(24) As part of the employment agreement of October 23, 1994, as amended, the defendant acknowledged that he was in a position to earn a livelihood without violating the provisions of the restrictive covenant contained in paragraph 19 and further acknowledged that the covenant was a material condition to the continuation of his employment by MWA. Notwithstanding this acknowledgement, the defendant did not obtain employment or practice opportunities in the remainder of the Commonwealth of Pennsylvania outside of the 45-mile restrictive covenant radius.

(25) Paragraph 19(f) provides that MWA may seek an injunction to protect their interest in the event the defendant breached the restrictive covenant contained

in said paragraph 19, and also provides that MWA may seek attorney's fees and court costs in addition to other damages or recovery, if MWA prevailed in any litigation to enforce the restrictive covenant.

(26) In 1998 and 1999, Dr. Martin Gallagher, a principal of MWA, began a practice of allowing the defendant, Dr. Heithaus, to perform reports of findings on patients following Dr. Gallagher's initial cognitive examination of these patients. A method of payment was developed for this practice. Dr. Gallagher became dissatisfied with the manner in which Dr. Heithaus was performing the reports of findings and the method of payment and terminated this practice in January of 2000.

(27) At the time this practice was begun by Dr. Gallagher, the defendant, Dr. Heithaus, did not request or cause to be executed any addendum to his employment agreement with MWA requiring or imposing any legal obligation on MWA to compensate him for the reports of findings under the employment agreement.

(28) In June of 1999, MWA implemented a health care reimbursement compliance program. Raymond Carney, the chief executive officer of MWA, was appointed as the compliance officer under said plan. The plan that was developed was consistent with office of inspector general's model guidelines. This plan conferred the right and imposed the obligation upon the defendant, Dr. Heithaus, to place in writing any improprieties or allegations of fraud. Dr. Heithaus acknowledged in July of 1999 that he had read, reviewed, and understood the compliance plan and agreed to abide by its terms.

(29) At no time did Dr. Heithaus submit any written complaint about billing or coding improprieties at MWA.

(30) There has been no evidence presented that Dr. Gallagher or any other employee of MWA engaged in a conduct or practice that was inconsistent with any federal, state, or commercial health insurer, billing and coding rule. Further, there is no evidence that MWA engaged in any billing fraud.

(31) Dr. Rita Ellithorpe submitted a complaint pursuant to the aforesaid compliance plan. This complaint was investigated by Robert Ridge, Esq., a former U.S. attorney in the Department of Justice's Civil Fraud Division. This investigation was conducted at the request of MWA. It was the determination of Mr. Ridge that MWA complied in all material respects with its compliance plan and that the compliance plan worked as it was intended. Mr. Ridge further concluded that MWA had not engaged in any conduct that could be construed as fraudulent or improper.

(32) The evidence presented by the defendant, Dr. Heithaus is insufficient to establish by a preponderance of the evidence that his termination for cause was a pretext.

(33) The defendant was habitually tardy and continued to be habitually tardy following written warnings concerning said tardiness.

(34) The defendant, Dr. Heithaus, photocopied confidential information and removed the same from the office, including patient records and documentation. This copying and removal was in violation of MWA's written policies and contractual rules to the contrary.

14

(35) The defendant has failed to prove by a preponderance of the evidence that any statements made to him concerning praying with patients was in any way religious discrimination, or impeded his ability to pray with patients or violated any other provision of the employment agreement of October 23, 1994, as amended.

(36) The employment agreement of October 23, 1994, as amended, provides that the defendant would pay to MWA, as liquidated damages for his violation of the restrictive covenant contained in paragraph 19 thereof, the sum of $25,000. This agreement also provided that "the parties agree that this provision for liquidated and agreed upon damages is a bona fide provision for such, and is not a penalty." However, the plaintiffs have presented no evidence that the amount set forth in said employment agreement had any relation to the extent of the injury that may be caused by a breach of the covenant or that the amount fixed as liquidated damages was a reasonable forecast of the just compensation for the harm that could be caused by the breach. There has been no evidence presented that the amount set forth as liquidated damages was reasonably related to a reasonable estimate of just compensation for actual damages as opposed to a provision that was set forth in the agreement only to secure compliance with the restrictive covenant and therefore to act as a penalty for noncompliance.

## CONCLUSIONS OF LAW

(1) A restrictive covenant not to compete must satisfy three requirements:

"(a) the covenant must be related to a contract for employment;

"(b) the covenant must be supported by adequate consideration; and

"(c) the application of the covenant must be reasonably limited in both time and territory."

(2) The restrictive covenant to which the defendant, Dr. Heithaus, was subjected, was ancillary to his employment with MWA beginning October 23, 1994.

(3) The bargained-for exchange of the promises of MWA to the defendant, Dr. Heithaus, and from Dr. Heithaus to MWA contained in the employment agreement of October 23, 1994, constituted adequate consideration to support the covenant.

(4) The two-year, 45-mile radius restrictive covenant is reasonable in duration of time and in geographic scope as it is reasonably necessary for the protection of the employer, MWA, and does not impose an undue hardship on the employee.

(5) The defendant, Dr. Heithaus is in violation of the two-year, 45-mile radius restrictive covenant contained in paragraph 19 of the employment contract. The defendant materially breached paragraph 19(b)(1) and (3) by establishing a chiropractic and nutritional practice at 533 Washington Avenue, Bridgeville, Pennsylvania, in July 2000 and continuing through trial. In addition, the defendant materially breached paragraph 19(b)(4) of the employment agreement by treating patients at the Bridgeville location for whom he provided chiropractic and nutritional services while at MWA.

(6) The aforesaid breach by the defendant, Dr. Heithaus, interfered with MWA's business relationships with its patients.

16

(7) The evidence is insufficient to establish that the plaintiff/employer, MWA, engaged in fraud.

(8) The evidence is insufficient to establish that the plaintiff/employer, MWA, has "unclean hands."

(9) The evidence is insufficient to establish that the plaintiff/employer, MWA, unlawfully and unjustly terminated the defendant for his religious beliefs.

(10) The evidence is insufficient to establish that the plaintiff/employer, MWA, wrongfully and unjustly terminated the defendant without just cause.

(11) The evidence is insufficient that the plaintiff/employer, MWA, methodically worked to reduce the defendant's patient workload and thus the evidence is insufficient to establish a constructive discharge of the defendant.

(12) The evidence is insufficient to establish that the plaintiff/employer, MWA, breached a covenant of good faith and fair dealing implied in the employment agreement of October 23, 1994, as amended, by engaging in a continuing pattern of harassment.

(13) The evidence is insufficient to establish that the plaintiff/employer, MWA, breached the employment agreement by failing to pay for reports generated by the defendant, Dr. Heithaus.

(14) MWA did not materially breach the employment agreement of October 23, 1994, as amended.

(15) The practice established by Dr. Gallagher to pay Dr. Heithaus for reports of findings that were prepared by Dr. Heithaus on behalf of Dr. Gallagher and other chiropractors and/or medical doctors, constituted the payment of a bonus as permitted under paragraph 11 of

the said employment agreement. This practice did not rise to a modification of the employment agreement. Therefore, the discontinuation of the practice of Dr. Heithaus preparing reports of findings for others and the payment therefore, did not constitute a material breach of the employment agreement.

(16) The defendant failed to prove by a preponderance of the evidence that his termination for cause was pretextual in that sufficient reasons actually existed for the termination.

(17) The defendant, Dr. Heithaus, materially breached paragraph 19(d) of the employment contract by removing from MWA's premises originals and copies of patient medical records and documentation.

(18) The defendant, Dr. Heithaus, has failed to carry his burden of proof with regard to his counterclaim and the same shall be dismissed with prejudice.

(19) Paragraph 19(f) of the employment agreement of October 23, 1994, as amended, provides that in the event it is necessary for the employer to sue to enforce the provisions of this agreement, the employee shall be liable to the employer if the employer prevails in the suit for attorney's fees and costs of suit; in addition to damages or other recovery. However, there has been no evidence presented relating to the issue of attorney's fees and therefore the same have not been specifically proven.

## DISCUSSION

Plaintiff Medical Wellness Associates P.C. seeks an injunction against defendant Richard J. Heithaus D.C.

as a result of Heithaus' violation of an enforceable noncompetition clause in his employment agreement with MWA.

MWA is a multi-disciplinary health care practice offering, inter alia, professional chiropractic and nutritional counseling services as an alternative to traditional medicine, whose market and patient base extends within a radius of at least 60 miles from its location in Jeannette, Pennsylvania. But for the covenants in his contract with MWA, defendant, Heithaus, a licensed chiropractor, may practice chiropractic anywhere else in Pennsylvania by virtue of his license and may also provide nutritional counseling services anywhere in Pennsylvania, as such services do not require separate licensure in the Commonwealth.

MWA and its predecessor in interest, Chiropractic Nutritional Associates Inc., have offered professional chiropractic and nutritional counseling services in the general proximity of its present address in Jeannette, Pennsylvania, since 1974.

On or about October 23, 1991, defendant Heithaus entered into an employment agreement with CNA detailing the rights, duties and responsibilities of Heithaus relating to the practice of chiropractic and nutritional services he would render for the practice, confidential patient records and information, trade secrets and noncompetition. On October 23, 1992, and October 23, 1994, Dr. Heithaus was re-employed by further agreements executed by the parties on those dates. CNA's rights and responsibilities as the employer under the aforesaid agreements were assigned on July 22, 1996,

to plaintiff MWA (contemporaneous with the merger of CNA with and into MWA). The employment agreement was further amended on October 22, 1996, to increase Heithaus' compensation and fringe benefits as well as to extend the term of Heithaus' employment with MWA.

During defendant Heithaus' employment with MWA, defendant provided chiropractic treatment and nutritional counseling to hundreds of patients developed by MWA.

On or about January 7, 2000, MWA's CEO, Raymond T. Carney, met with defendant Heithaus to discuss defendant's low productivity and habitual tardiness, in contravention of his obligations under the employment agreement.

On or about April 5, 2000, Mr. Carney transmitted a memorandum to all staff at MWA restricting use of copying equipment. Despite repeated offers of help and warnings concerning low productivity and perpetual tardiness, defendant Heithaus failed to comply with his duties and responsibilities under the employment agreement throughout the year 2000. On or about May 1, 2000, Mr. Carney again met with defendant Heithaus to discuss defendant's low productivity and continued unacceptable tardiness in contravention of the terms of the employment agreement.

Defendant Heithaus was employed in a position of trust and confidence, and had access to MWA's trade secrets, including but not limited to patient lists, patient names, addresses and telephone numbers, medical records, pricing information, billing procedures, patient

good will, and patient development and advertising techniques, all of which were highly confidential and valuable assets of MWA. On or about May 25, 2000, defendant Heithaus, was observed by Gloria Dell, a fellow employee of MWA, copying confidential patient medical records on MWA's copying equipment subject to the earlier communique to staff and in direct contravention of defendant Heithaus' employment agreement. Later, under oath, defendant Heithaus admitted that he had taken from MWA's premises confidential patient information without the consent of MWA. As a result of defendant Heithaus' violations of his obligations under the employment agreement and acts of misconduct delineated above, MWA terminated defendant Heithaus' employment for cause effective May 31, 2000.

Pursuant to the terms of the amended employment agreement of October 23, 1994, as amended, defendant Heithaus explicitly covenanted not to provide chiropractic, rehabilitation, or nutritional services of the types provided by MWA in any capacity and at any location within a 45-mile radius of MWA's office for two years after termination of his employment. A restrictive covenant was contained in each of the employment contracts entered into by defendent Heithaus with MWA and its predecessor in interest and was therefore ancillary to Heithaus taking employment at MWA and he executed the initial employment agreement containing the restrictive covenant prior to performing any professional services on behalf of MWA and its predecessor. All professional employees of MWA are required to have executed employment agreements containing cov-

enants not to compete substantially identical to the covenant signed by defendant Heithaus.

Subsequent to his termination of employment for cause with MWA defendant Heithaus established at 533 Washington Avenue, Suite 204, Bridgeville, Pennsylvania, located 26.775 miles away from MWA's location, his own office for the practice of chiropractic and nutritional counseling identical to those services provided by MWA. Defendant Heithaus has also solicited MWA's patients and other individuals with whom he established a professional relationship while employed by MWA through telephone contact, advertisements in the Greensburg *Tribune* announcing the opening of the "Heithaus Chiropractic and Nutrition Clinic" and indicating that new patients were being accepted by appointment. Likewise, he has actively solicited patients through copies of flyers released in the community and on-line advertising, together with a weekly radio program referred to as "Health Matters" aired on WKHB 620 AM in the Greensburg area. He actively solicits patients by advising listeners that he takes patients by appointment at the Bridgeville address. Moreover, he has participated in seminars where he has responded to personal health questions of attendees specifically involving the practice of chiropractic and nutritional counseling.

Pennsylvania courts have long held that separate and distinct standards govern the issuance of a preliminary injunction as opposed to a permanent injunction. "[A] preliminary injunction turns on the presence of imminent, irreparable harm, while a permanent injunction is

warranted if no adequate remedy at law exists for a legal wrong." *City of Chester v. Chester Redevelopment Authority,* 686 A.2d 30, 35 (Pa. Commw. 1996). See also, *Fox-Morris Associates Inc. v. Conroy,* 460 Pa. 290, 294, 333 A.2d 732, 734 (1975) (Roberts, J. concurring); *Soja v. Factoryville Sportsmen's Club,* 361 Pa. Super. 473, 522 A.2d 1129 (1987); *LARA Inc. v. Dorney Park Coaster Co.,* 116 Pa. Commw. 548, 542 A.2d 220 (1988), *app. denied* 522 Pa. 580, 559 A.2d 40 (1989).

*West Penn Specialty MSO Inc. v. Nolan,* 737 A.2d 295 (Pa. Super. 1999) and *New Castle Orthopedic Associates v. Burns,* 481 Pa. 460, 392 A.2d 1383 (1978), together with *Geisinger Clinic v. Di Cuccio,* 414 Pa. Super. 85, 606 A.2d 509 (1992), *app. denied,* 536 Pa. 625, 637 A.2d 285 (1993), provide the seminal analysis in the enforcement of noncompete clauses in health provider employment contracts. *West Penn Specialty* and *New Castle Orthopedic* are instructive for the purpose of evaluating a noncompete covenant in a health care practitioner's employment agreement.

Where a restrictive covenant seeks to limit the professional practice of a health care provider, the court will scrutinize the effect of the resulting loss of similar professional health care services on the public interest, but will also apply commercial standards related to an employer's loss of business opportunity and competitive market advantage, damage to existing patient relationships, and foreshadowing of the disruption of business relations that may result in incalculable damage. *West Penn Specialty, supra; New Castle Orthopedic, supra.*

In order for MWA to show the activity of defendant Heithaus is actionable, and its right to an injunction is clear, the noncompetition agreement must be enforceable. To be enforceable, the restrictive covenant must meet three requirements: (1) the covenant must relate to the contract for employment; (2) the contract must be supported by adequate consideration; and (3) the covenant must be reasonably limited in both duration of time and geographical extent. *Davis v. Warde Inc. v. Tripodi,* 420 Pa. Super. 450, 616 A.2d 1384 (1992), *app. denied,* 536 Pa. 624, 637 A.2d 284 (1993); see also, *Geisinger Clinic v. Di Cuccio,* 414 Pa. Super. 85, 606 A.2d 509 (1992), *app. denied,* 536 Pa. 625, 637 A.2d 285 (1993).

A restrictive covenant that is a part of a contract of employment, and not an afterthought to impose additional restrictions, is ancillary to the employment relationship and thus supported by valid consideration. *Beneficial Finance Co. of Lebanon v. Becker,* 422 Pa. 531, 222 A.2d 833 (1966). On October 23, 1991, the date Heithaus began employment at MWA (formerly CNA) Heithaus executed an employment agreement containing a restrictive covenant prior to performing any professional duties on behalf of MWA. It is well established that when a restrictive covenant is part of a contract of employment the consideration for the covenant is the job itself. *Geisinger Clinic v. Di Cuccio, supra; Quaker City Engine Rebuilders Inc. v. Toscano,* 369 Pa. Super. 573, 535 A.2d 1083 (1987). Moreover, the noncompete covenant contained in the October 23, 1994 employment agreement, as amended, that MWA seeks to enforce, is supported by consideration in the form of the

re-employment of Dr. Heithaus for an additional term and the bargained-for and exchanged promises of the parties contained therein. This employment agreement of October 23, 1994, was a new contract of employment and the restrictive covenant was ancillary thereto.

To be enforceable, a restrictive covenant must be reasonably limited in both duration of time and geographic extent. A covenant not to compete is reasonably limited if it is within the time and territory that is reasonably necessary for the protection of the employer and does not impose an undue hardship on the employee. *Modern Laundry & Dry Cleaning Co. v. Farrer,* 370 Pa. Super. 288, 536 A.2d 409 (1988); *Jacobson & Co. Inc. v. International Environment Corp.,* 427 Pa. 439, 235 A.2d 612 (1967). The restrictive covenant agreed to by the defendant, Heithaus, is reasonably limited in duration to a period of two years and reasonably limited in territory to a 45-mile radius from MWA's principal place of business, which is far less than MWA's general patient market. See *e.g., Geisinger Clinic v. Di Cuccio, supra* (two-year, 50-mile radius covenant upheld against physician); *DeMuth v. Miller,* 438 Pa. Super. 437, 652 A.2d 891 (1995) (five-year, 50-mile radius covenant upheld against accountant); *John G. Bryant Co. Inc. v. Sling Testing and Repair Inc.,* 471 Pa. 1, 369 A.2d 1164 (1977) (three-year, geographic area covering parts or three different states covenant upheld against salesman). Moreover, the burden of proof is on the defendant to show that the covenant is unreasonable or that it should not be enforced. *Bryant, supra,* 471 Pa. at 12, 369 A.2d at 1169.

Pennsylvania courts have consistently affirmed covenants not to compete for terms between two and three years after employment ends. See *Bryant, supra* (three years); *Geisinger Clinic, supra* (two years against a physician); *Hayes v. Altman,* 424 Pa. 23, 225 A.2d 670 (1967) (three years against an optometrist); *Worldwide Auditing Services Inc. v. Richter,* 402 Pa. Super. 584, 587 A.2d 772 (1991) (two years). During defendant's employment with MWA, the defendant provided chiropractic treatment and nutritional counseling to hundreds of patients developed by MWA. A two-year restrictive covenant is therefore reasonable under the circumstances.

Moreover, the 45-mile radius limitation from MWA's place of business is reasonable. Pennsylvania courts have established a linear connection between reasonableness of a geographic restriction and the employer's verifiable market. See *Sidco Paper Co. v. Aaron,* 465 Pa. 586, 351 A.2d 250 (1976); *Bryant, supra; Geisinger Clinic, supra; Worldwide Auditing Services, supra; Volunteer Firemen's Insurance Services Inc. v. CIGNA Property and Casualty Insurance Agency,* 693 A.2d 1330 (Pa. Super. 1997) (upholding nationwide noncompete agreement). MWA has established a patient base in excess of a 60-mile radius around its location at 91 Lincoln Way East, Jeannette, Pennsylvania. The covenant is designed to prevent a disturbance in the patient relationships that have been established between MWA and its patients developed over a period of time beginning in 1978, and adequately reflects MWA's verifiable market area, therefore the 45-mile radius limitation is geographically reasonable and enforceable.

The injury caused by a violation of a covenant not to compete is particularly difficult to quantify for damage purposes. *Records Center Inc. v. Comprehensive Management Inc.,* 363 Pa. Super. 79, 525 A.2d 433 (1987). The Superior Court in *Records Center* stated:

" 'The great weight of modern authority is to the effect that one who has been or will be injured [by violation of a covenant not to compete] is ordinarily entitled to the equitable remedy of injunction . . . .' . . . The Pennsylvania Supreme Court has also stated that such covenants are prima facie enforceable in equity." *Id.* at 86, 525 A.2d at 436.

The Superior Court recently explained why equitable relief is necessary in virtually all of these cases: " '[i]t is not the initial breach of the covenant which necessarily establishes the existence of irreparable harm but rather the *unbridled threat of the continuation of the violation,'* and incumbent disruption of the employer's customer relationships." *West Penn Specialty, supra* at 299 (quoting *Bryant,* 471 Pa. at 8, 369 A.2d at 1167). (emphasis added)

"[G]rounds for an injunction are established 'where the plaintiff's proof of injury, although small in monetary terms, foreshadows the disruption of established business relations which would result in incalculable damage should the competition continue in violation of the covenant.'. . . The effect of such disruption may manifest itself in a loss of new business not subject to documentation, the quantity and quality of which are 'inherently unascertainable.' " *Id.* at 299 (quoting *New Castle Orthopedic, supra* at 466, 392 A.2d at 1386 and *Bryant, supra* at 8, 369 A.2d at 1167).

In *West Penn Specialty,* the court enjoined a physician specializing in the treatment of cancer (oncology) from competing with her former employer under a restrictive covenant prohibiting her from establishing a practice within the entire time of her five-year contract plus one year subsequent thereto within 10-mile radius of the employer's primary practice site. This court found the former employer's loss of several patients reasonably foreshadowed a continuing exodus of more patients. The court analyzed the employer's interest in terms of commercial concepts, finding that the physician's "defection" imposed a "substantial competitive disadvantage" on the employer, and that her "departure signaled a significant loss of business opportunity and market advantage." *Id.* at 299.

The evidence in this case has shown that Dr. Heithaus has treated at least 48 patients that have had a prior connection to MWA. He has actively solicited patients by way of telephonic and written material to begin treating with him in Bridgeville. He conducts a weekly radio program referred to as Health Matters airing on WKHB 620 AM in the Greensburg area well within the 45-mile radius of MWA's office and practice location, and has participated in health seminars within the restricted area where he has responded to personal health questions of attendees which specifically involve the practice of chiropractic and/or nutritional counseling. The threat of further patient losses to MWA is real and substantial yet impossible of calculation by an accurate pecuniary standard.

The services furnished by defendant are of special, unique, unusual, extraordinary and intellectual charac-

ter giving them a peculiar value. MWA's relationships with its patients are valuable assets acquired as a result of its efforts over a long period of time. The effect of the defendant's interference with those relationships is unascertainable and irreversible. Therefore, such conduct is appropriately remedied by granting the permanent injunction requested by MWA.

Defendant Heithaus may practice chiropractic anywhere in Pennsylvania by virtue of his license and may provide nutritional counseling services anywhere in Pennsylvania, as such services do not require separate licensure in the Commonwealth. The entry of a decree nisi enjoining the defendant from practicing within the restrictive covenant area for which he bargained and to which he agreed would create no damage or undue hardship to him. This is so because the injunction would still permit the defendant to engage in the practice of chiropractic and nutritional counseling outside the reasonable geographic limitations.

The grant of an injunction against the defendant will not have an adverse impact on the public interest in the availability of chiropractic and nutritional counseling services in the restricted area. There is no dearth of qualified chiropractors and nutritional counselors offering alternatives to traditional medical treatment in the restricted area. On the contrary, the current public demand of alternative medical care provided by MWA and Dr. Heithaus is not great enough to outstrip the ability of MWA and other qualified health care providers to meet.

Defendant Heithaus has suggested that the term "radius" means a driving distance and not a straight line

distance. Common understanding recognizes that a radius is a straight line measurement. See Webster's New Collegiate Dictionary (1981 edition), p. 945 ("radius" is defined as "a line segment extending from the center of a circle or sphere to the curve or surface..1"). Expert testimony has established that the radius measured from MWA's place of business in Jeannette to Heitheus' chiropractic office in Bridgeville is 26.775 miles, well within the 45-mile restricted area to which Heithaus agreed.

The defendant contends that he was wrongly terminated by MWA. In support of this assertion, he indicates that he was "harassed" in the following ways: (1) although he admits to having been perpetually late to work and that he was aware of the policy concerning prompt arrival so as not to inconvenience patients, other people were late also and that should excuse him; (2) although he admits that his work bins were untidy, others had untidy bins also and that should excuse him; (3) he was advised by MWA that he could not pray with patients there; (4) MWA gradually decreased the number of patients referred to him for diagnosis and treatment and his productivity slumped as a result of this. The first and second contentions are not legitimate defenses to a violation of his employment contract causing his termination. The third contention has not been established by the evidence. The evidence has shown that defendant was referred patients on a rotation identical to that of the other chiropractors on staff.

The defendant has not proven that MWA materially breached any provision of the employment contract.

Equity therefore demands that the injunction, together with other appropriate relief, be granted.

In addition to the equitable relief requested by the plaintiff, which this court shall grant, the plaintiff is also seeking damages. The damages being sought by plaintiff are unliquidated, actual damages as well as liquidated damages in the amount of $25,000, together with attorney's fees and cost. The plaintiff has not presented evidence to this court regarding any specific actual damages that it has suffered. Its main contention has been that the same are difficult to measure and ascertain. Therefore, this court has no basis upon which to determine the amount of actual damages suffered by the plaintiff.

With regard to the request for liquidated damages, in situations where parties use a liquidated damages clause, the court must always first determine if this clause actually represents liquidated damages or is, in fact, a penalty. *Holmes Electric Protective Co. v. Goldstein,* 147 Pa. Super. 506, 24 A.2d 161 (1942). Therefore, since the presumption is that the clause is a penalty, the plaintiff must overcome this presumption by a preponderance of the evidence. The criteria that the court must review to determine whether or not the provision is valid or a penalty is as follows:

(1) The intention of the parties.

(2) The relation which the sum stipulated bears to the extent of the injury which may be caused by a breach.

(3) The ease or difficulty of measuring a breach in damages.

(4) The amount fixed must be a reasonable forecast of just compensation for the harm that may be caused by the breach. See *Hanrahan v. Audubon Builders Inc.,* 418 Pa. Super. 497, 614 A.2d 748 (1992).

If the amount set forth is an amount meant only to secure compliance and not reasonably related to a reasonable estimate of just compensation for actual damages, then it would be a penalty and would fail as unenforceable. *Hanrahan, supra.* In the present case, the plaintiffs have not presented evidence concerning how it has been determined by the parties that $25,000 would be treated as liquidated damages. There is no evidence that has been presented that the amount set forth is in any way a reasonable forecast of the just compensation for the harm that may be caused by the breach. The plaintiff has presented no evidence that the amount set forth is reasonably related to an estimate of the just compensation for actual damages and thus have failed to overcome the presumption that the amount set forth was one meant only to secure compliance and thus a penalty in nature. Therefore, the request for liquidated damages shall be denied.

The plaintiff is also requesting attorney's fees and costs. It is clear that the contract provides for such a remedy. However, once again the plaintiff has not, during the trial of this case, presented any evidence with regard to the matter of attorney's fees and costs. Failing to do so, there is insufficient evidence upon which this court can determine the amount of such damages. Therefore, the request for such damages shall also be denied.

## DECREE NISI

And now, February 13, 2001, in accordance with the foregoing decision, the following decree nisi is entered:

(1) The defendant, Richard J. Heithaus D.C., is ordered to cease practicing chiropractic and offering nutritional services to patients at his Bridgeville office within five days from the date of this decree.

(2) The defendant shall not compete in any way with employer, directly or indirectly, and will not consult with or have an interest in any business, firm, person, partnership, corporation, hospital, medical or chiropractic office, clinic or other health care provider or other entity which engages in the practice of chiropractic or provides chiropractic, rehabilitation, or nutritional services of the types provided by Medical Wellness Associates P.C. at any location within a 45-mile radius of the office of Medical Wellness Associates, P.C.

(3) The defendant shall not accept employment with any business, firm, person, partnership, corporation, hospital, medical or chiropractic office, clinic, or other health care provider or other entity which engages in the practice of chiropractic or provides chiropractic, rehabilitation, or nutritional services of the types provided by Medical Wellness Associates, P.C. at any location within a 45-mile radius of the office of Medical Wellness Associates P.C.

(4) The defendant shall not practice chiropractic within a 45-mile radius of Medical Wellness Associates P.C.

(5) The defendant shall not provide, within a 45-mile radius of employer, professional chiropractic, rehabilitation or nutritional services, to any customer of Medical Wellness Associates P.C. with whom or with which he was a principal contact at any time during his employment with Medical Wellness Associates P.C.

(6) The defendant shall return to Medical Wellness Associates P.C. within five business days of this decree, all copies and originals of any documents he has removed from Medical Wellness Associates P.C.

(7) The defendant's counterclaim is dismissed with prejudice.