TRIBUNE–UNITED CABLE OF
MONTGOMERY COUNTY,
Appellant,

v.

MONTGOMERY COUNTY, MARYLAND;
Continental Illinois National Bank &
Trust Company of Chicago, Appellees.

No. 85–2272.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 6, 1986.

Decided March 10, 1986.

Rehearing and Rehearing En Banc
Denied April 15, 1986.

Jay E. Ricks, Washington, D.C. (Gardner F. Gillespie, John C. Keeney, Jr., David A. Kikel, P. Dustin Finney, Jr., Hogan & Hartson, Washington, D.C., Jonathan Wise Polier, on brief), for appellant.

Nicholas P. Miller (W. Randolph Young, Larrine S. Holbrooke, Miller & Young, Paul A. McGuckian, Co. Atty., David P. Towey, Sanford, Adams, McCullough & Beard, Washington, D.C. on brief), for appellees.

Before WINTER, Chief Judge and SPROUSE and CHAPMAN, Circuit Judges.

SPROUSE, Circuit Judge:

Tribune-United Cable of Montgomery County, a Maryland partnership, appeals from the order of the district court denying its motion for a preliminary injunction against Montgomery County, Maryland, and the Continental Illinois National Bank and Trust Company of Chicago.[1] We reverse.

I.

In 1981, Montgomery County solicited proposals for the construction of a cable television system. Following an evaluation of several proposals, the County awarded the franchise to Tribune-United. After lengthy negotiations, the parties executed a franchise agreement in May 1983. The more than two hundred page document granted Tribune-United a nonexclusive franchise to operate a cable system in Montgomery County. It covered the relationship between the parties, as well as all significant aspects of the construction and operation of the cable system; essentially, it called for a state-of-the-art cable system.

Tribune-United experienced difficulties, including serious construction problems, in complying with the franchise agreement within a few months after work on the system began. Instead of using conventional equipment, Tribune-United had elected to install the TRACS signal distribution system, which employed new technology. The sole supplier for the TRACS system was experiencing both financial and quality control problems, and its equipment deliveries were often late. These equipment difficulties resulted in construction delays and operational failures in the Montgomery County cable system. Tribune-United did not meet its construction deadlines, and cable subscribers experienced numerous service problems. In addition, consumer demand for various services was far below predicted levels. The franchise agreement required construction of an Institutional Network (I–Net) for use by Montgomery County businesses. The lack of customer enthusiasm for the I–Net's design and the possibility of unanticipated regulation by the state public utility commission threat-

---

1. Continental holds a letter of credit issued by Tribune-United in favor of Montgomery County. Montgomery County has sought to foreclose on that letter of credit, and Tribune-United named Continental as a defendant in this action in order to enjoin that foreclosure. Continental has not taken any position in this litigation.

ened the financial feasibility of developing the I–Net. Consequently, Tribune-United decided not to construct the I–Net system.

Throughout 1985, the parties held numerous discussions regarding these difficulties. Tribune-United questioned the economic feasibility of a number of franchise requirements. The County grew more concerned as customer service problems mounted and Tribune-United failed to meet more contract deadlines. In May 1985, Tribune-United filed a report with the County detailing the problems with the system and informally requesting a review of the franchise agreement.

Efforts to negotiate an interim memorandum of understanding addressing the cable system's problems failed. On September 19, 1985, the County sent Tribune-United a formal notice of default, listing twenty-one specific items in the following categories: failure to construct the I–Net; unauthorized substitution of signal distribution equipment; failure to provide access grants and support for community programming; failure to provide local origination facilities, plans and programming; failure to provide a hearing impaired channel and service; failure to make a good faith effort to meet minority procurement goals; failure to furnish construction maps; failure to conduct a regional interconnect study; and failure to demonstrate interactive polling capability. Tribune-United subsequently corrected several violations which the County had indicated were of top priority, but did not remedy many of the items listed in the default notice. After learning that Tribune-United had ceased laying cable to new areas, the County issued a second notice of default on November 1, 1985, and threatened to invoke the penalty provisions of the franchise agreement if Tribune-United did not complete corrective action within ten working days.

On November 8, 1985, Tribune-United formally requested modification of the franchise agreement pursuant to section 545 of the Cable Communications Policy Act of 1984. 47 U.S.C. § 521 *et seq.* (Supp. 1985). Citing commercial impracticability, the company requested modification of the franchise agreement with regard to many of the same franchise provisions detailed in the default letters, including: the I–Net requirement; access and origination support requirements; the dual cable capacity requirement; and the construction schedule. Three days later, the County announced that it was commencing proceedings to revoke Tribune-United's franchise but that it would simultaneously consider the modification request. The County also announced that it had taken steps to draw down a five million dollar letter of credit held by Continental as well as a related security deposit and would assess nine thousand dollars a day in liquidated damages for construction delays.

The next day, November 13, 1985, Tribune-United brought this action for declaratory and injunctive relief to prevent the County and Continental from carrying out the penalty provisions of the franchise agreement until the County had acted on the pending modification request. The district court immediately issued a temporary restraining order in favor of Tribune-United. The following day, Montgomery County moved for reconsideration of the order. The district court held a hearing and, on November 19, 1985, issued a memorandum and order vacating the temporary restraining order. The next day, it denied Tribune-United's motion for a preliminary injunction. Tribune-United appeals from that judgment.

## II.

The Cable Communications Policy Act of 1984 establishes a national framework and standards for regulating the cable television industry. It authorizes local governments to regulate cable television through the franchise process, but at the same time restricts that regulatory power. The Act's provisions granting local governments power to enforce franchise agreements and providing for modification of those agreements are pertinent to this appeal.

Section 552(b) of the Act grants local authorities the power to enforce customer

service and construction related requirements of franchise agreements "to the extent not inconsistent with [the Act]." Section 544(c) addresses the enforcement of existing agreements:

> In the case of any franchise in effect on the effective date of this subchapter, the franchising authority may, *subject to section 545 of this title,* enforce requirements contained within the franchise for the provision of services, facilities, and equipment, whether or not related to the establishment or operation of a cable system. (emphasis added).

Section 545 of the Act grants cable operators the right to have certain franchise requirements modified if the commercial impracticability of those requirements can be demonstrated.[2] Tribune-United's modification request under this section is pending before Montgomery County officials.[3] The sole issue on appeal is whether the "subject to" language of section 544(c) of the Act subordinating a local government's enforcement rights to the modification provisions of section 545 requires the County to delay imposing the penalties authorized by the existing franchise agreement until after it acts on the modification request.

The County contends, and the district court held, that the limitation on a local government's enforcement power imposed by a cable operator's section 545 right to modification applies to and limits only the imposition of those penalties that accrue

after the application for modification. In other words, the County agrees that, pending the modification determination, penalties could not be imposed for violations occurring after the application. It contends, however, that it could impose penalties during the pendency of the modification request for defaults which had occurred prior to Tribune-United's modification application. Tribune-United, on the other hand, argues that section 544(c) prohibits enforcement of the franchise agreement by imposing penalties, even as to past violations, until the modification proceedings have been concluded.

There is little save the language of the statute to guide us on this question. It would make little sense, however, for Congress to subordinate the County's enforcement power to the Act's modification procedures but at the same time to permit the County to enforce the very obligations sought to be modified. By making a local government's enforcement power "subject to section 545," Congress provided the cable operator an opportunity to show that certain aspects of the franchise agreement are commercially impractical, and, if it is successful in demonstrating that, it will be relieved entirely from the adverse aspects of those portions of the agreement.

■ The County accurately asserts that the language of the Act does not explicitly require that the imposition of penalties be stayed or enjoined pending the considera-

---

**2.** The section provides in pertinent part:

(a) Grounds for modification by franchising authority; public proceeding; time of decision

(1) During the period a franchise is in effect, the cable operator may obtain from the franchising authority modifications of the requirements in such franchise—

(A) in the case of any such requirement for facilities or equipment, including public, educational, or governmental access facilities or equipment, if the cable operator demonstrates that (i) it is commercially impracticable for the operator to comply with such requirement, and (ii) the proposal by the cable operator for modification of such requirement is appropriate because of commercial impracticability;

. . . . .

(2) Any final decision by a franchising authority under this subsection shall be made in a public proceeding. Such decision shall be made within 120 days after receipt of such request by the franchising authority, unless such 120 day period is extended by mutual agreement of the cable operator and the franchising authority.

47 U.S.C. § 545(a). Subsection (b) allows an operator to seek judicial review in the event of an adverse decision by the franchising authority.

**3.** Under section 545(a)(2), the County's decision must be announced within 120 days of receipt of the modification request, or by March 10, 1985. The County has decided to conduct the modification proceeding separately from the previously announced revocation proceedings.

tion of a modification request. The purposes and thrust of the Act, however, evince a congressional desire that franchise agreements be applied and modified so as to obtain a realistic and flexible regulatory framework recognizing the needs of both local governments and cable operators, but primarily concerned with providing viable cable systems responsive to the needs and interests of the local communities they serve.

Congress, by including section 545 in the Act, recognized that cable operators compete in a changing marketplace. H.R.Rep. No. 934, 98th Cong., 2d Sess. 70, *reprinted in* 1984 U.S.Code Cong. & Ad.News 4655, 4707. It was sufficiently concerned with the plight of some cable operators, particularly urban franchisees committed to state-of-the-art systems, to create a federally protected right to modification of commercially impractical agreements. That right would mean very little if local franchising authorities were able to burden it by enforcing massive penalties during the pendency of the modification proceedings.

■ Severely penalizing an embryonic cable operation which may be stymied by commercial impracticabilities before it has had an opportunity to take advantage of the federally mandated right to modification does not strike us as promoting the objectives of the Act. Short of a bad faith or frivolous application for modification, we hold that such application automatically stays any action on the part of the franchising authority to enforce the penalty provisions of the franchise agreement until its decision has been finalized.

The judgment of the district court is, therefore, reversed in accordance with our order previously entered.

REVERSED.