RCN TELECOM SERVICES
OF PHILADELPHIA,
INC., Appellant

v.

NEWTOWN TOWNSHIP, BUCKS
COUNTY, Pennsylvania.

Commonwealth Court of Pennsylvania.

Argued March 3, 2004.
Decided May 7, 2004.

Andrew J. Katsock, III, Plains, for appellant.

Frederick A. Polner, Pittsburgh, for appellee.

BEFORE: McGINLEY, Judge, FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge FRIEDMAN.

RCN Telecom Services of Philadelphia, Inc. (RCN) appeals from the July 2, 2003, order of the Court of Common Pleas of Bucks County (trial court), which affirmed the order of the Board of Supervisors (Board) of Newtown Township (Township) directing RCN to pay damages to the Township as a result of RCN's breach of its agreement with the Township. We affirm.

On December 16, 1998, the Township authorized and enacted into ordinance[1] a Cable Television Franchise Agreement (Agreement or Ordinance) between RCN and the Township. (Board's Findings of Fact, No. 1; R.R. at 106a, 138a.) Pursuant to the Agreement, the Township granted RCN a non-exclusive right to erect, construct, operate and maintain a cable television system (Cable System) in the public rights-of-way of the Township for an initial term of ten years.[2] (Board's Findings of Fact, No. 2; Sections 2 and 3 of

---

1. Township Ordinance No. 98–0–21.

2. The Agreement would be extended for an additional period of five years provided that certain conditions were met. (Section 3 of Agreement, R.R. at 111a.)

Agreement, R.R. at 111a.) Pursuant to section 6.1 of the Agreement, RCN was to complete construction of, and fully activate, the Cable System by December 16, 2002. (Board's Findings of Fact, No. 4; Section 6.1 of Agreement, R.R. at 114a.) The Agreement also required RCN to design, construct and activate an Institutional Network[3] for the Township by December 16, 2002. (Board's Findings of Fact, No. 4; Section 25 of Agreement, R.R. at 135a.)

By letter dated November 7, 2001, Thomas K. Steel, Jr., Vice–President and Regulatory Counsel for RCN, informed Scott Harper, then-Secretary of the Board, that "RCN had no plans to begin construction in Newtown Township in 2001, nor 2002, nor for the foreseeable future." (Board's Findings of Fact, No. 5; R.R. at 141a.) On November 27, 2001, the Township, by its solicitor, sent a Notice of Default to RCN President Jeffrey White, notifying RCN that it was in default of the Agreement.[4] (Board's Findings of Fact, No. 6; R.R. at 143a–44a.)

On December 20, 2001, Andrew J. Katsock, III, Esquire, representing RCN, sent a letter to the Township stating, "Pursuant to Section 12.3 of the Agreement, please accept this correspondence as notice that RCN contests the assertion of non-compliance alleged by [the] Township.... In accordance with said Section 12.3, the time specified to cure the alleged defect shall be stayed or tolled pending a hearing."[5] (R.R. at 145a; see Board's Findings of Fact, No. 7.) On January 16, 2002, the Township, by its solicitor, notified RCN, by its attorney Katsock, that a hearing would be held pursuant to section 12.3 of the Agreement on February 28, 2002, regarding RCN's contest to the Township's November 27, 2001, Notice of Default. (Board's Findings of Fact, No. 8.)

At the February 28, 2002, hearing, the Board accepted the following Township exhibits into evidence: a copy of the Agreement in the form of Township Ordinance No. 98–0–21, which had attached to it RCN's acceptance of the conditions and

---

**3.** The Institutional Network is an intranet linking: six locations of the Township; two locations of the Newtown Fire Association; the Newtown Ambulance Squad; the Borough of Newtown; the Newtown, Bucks County Joint Municipal Sewer Authority; and a street traffic control system as may be designated by the Township. (Board's Findings of Fact, No. 4; Sections 1 and 25 of Agreement, R.R. at 109a, 135a.)

**4.** The letter asserted that RCN was in default of section 6.1 of the Agreement, requiring complete construction and full activation of the Cable System no later than December 16, 2002. The letter stated that the Township interpreted Steel's November 7, 2001, letter as RCN's anticipatory breach of a material provision of the Agreement. (R.R. at 143a.) The letter also asserted that RCN was in default of section 25 of the Agreement, which required RCN to provide the Township with a design for constructing and operating an Institutional Network on or before February 14, 1999. (R.R. at 143–44a.)

**5.** Section 12.3 of the Agreement provides:

Except as to Section 12.1(a) (failure to timely remit payment, statement or certification), [RCN] shall have thirty (30) days from receipt of the notice described in Section 12.2 [notice of violation] to (a) respond to the [Township] contesting the assertion of noncompliance, and (b) to cure such default, or, in the event that by the nature of default, such default cannot be cured within the thirty (30) day period, request permission from the [Township] for additional time in which to take reasonable steps to remedy such default and such permission shall not be unreasonably withheld. Except as to a Section 12.1(a) or violation which presents an immediate danger to health or safety, in the event [RCN] contests the assertion of non-compliance in a timely manner then the time specified to cure the alleged default shall be stayed or tolled pending a hearing before the [Township].....
(R.R. at 120a–21a.)

obligations imposed by the Ordinance; the November 7, 2001, letter from Steel indicating that RCN had no plans to begin construction in the Newtowns in 2001, 2002, nor the foreseeable future; the November 27, 2001, Notice of Default letter to RCN; and Katsock's December 20, 2001, letter, on behalf of RCN, contesting the Township's Notice of Default. (Board's Findings of Fact, Nos. 12–18.) The Board also admitted into evidence the January 16, 2002, letter to Katsock notifying RCN of the date, time and place of the hearing. (Board's Findings of Fact, No. 12.)

For its part, RCN attempted to offer into evidence its request for modification of the Agreement;[6] however, the Board did not admit this evidence, ruling that it was not relevant to the issue of whether the Agreement had been breached. (R.R. at 74a–82a.) RCN presented no witnesses at the hearing and no evidence to refute the Township's allegation of default. (Board's Findings of Fact, No. 20.)

The Board concluded that the Agreement is a legally binding contract between the Township and RCN and that RCN committed an anticipatory breach of the Agreement by issuing its November 7, 2001, letter. (Board's Conclusions of Law, Nos. 6, 7.) The Board also concluded that RCN breached the Agreement by (1) failing to complete construction and fully activate the Cable System in accordance with section 6.1 of the Agreement, and (2) failing to complete an Institutional Network pursuant to section 25.A of the Agreement. (Board's Conclusions of Law, No. 8.) The Board determined both of these to be material breaches of the Agreement. (Board's Conclusions of Law, No. 8.)

The Board then considered the issue of liquidated damages, which are provided for under section 12.4 of the Agreement, which provides:

(A) Amounts of Liquidated Damages. Because [RCN's] failure to comply with provisions of the Franchise will result in injury to the [Township] in amounts that will be difficult to quantify with reasonable certainty, the [Township] and [RCN] agree to the following liquidated damages for the following violations. These damages represent the parties' best estimate of the damages resulting from the specified injury and are not a penalty or forfeiture and are one or more exclusions to the term "franchise fee" provided in the [Communications Act of 1934]. . . .

. . .

(3) For failure to complete construction and/or fully activate the Cable System in accordance with Section 6, five hundred dollars ($500.00) per day that the Cable System is not provided, installed and/or activated.

. . .

(6) For all other material violations of this Agreement, $500/day for each day the violation continues.

(R.R. at 121a.) Pursuant to section 12.4, the Board determined that, for RCN's failure to construct and activate the Cable System, RCN owes liquidated damages in the amount of $1,096,000.00, and for RCN's failure to complete an Institutional Network, RCN owes liquidated damages in the amount of $1,096,000.00.[7] Thus, the

---

6. The request was in the form of a letter from Katsock to the Township Manager. It was dated February 28, 2002, and had been delivered to the Township Manager at approximately 2:00 p.m. that same day. (R.R. at 73a–74a.)

7. The Board concluded that pursuant to section 12.4(A)(3) of the Agreement, if RCN fails to complete construction and/or fully activate the Cable System in accordance with Section 6 of the Agreement, the Township is entitled to $500.00 per day for each day that the Cable

Board entered an award against RCN and in favor of the Township in the total amount of $2,192,000.00. (Board's Conclusions of Law, Nos. 13–15, Order.)

■ RCN appealed to the trial court, arguing that: (1) the Board lacked jurisdiction over the matter because the Agreement contained a mandatory arbitration provision, and this dispute should have been submitted to arbitration; (2) federal law required the Board to stay the imposition of damages, which RCN characterizes as "penalties," so long as RCN's application for modification was pending; (3) the liquidated damages provision is unenforceable because it constitutes a penalty; and (4) RCN's constitutional rights were violated. (R.R. at 169a–78a, 196a–206a.) As to these issues, the trial court concluded that the Agreement's arbitration provision did not apply, and, thus, the Agreement did

not require that the matter be arbitrated. The trial court also concluded that the liquidated damages were not a penalty.[8] Accordingly, the trial court affirmed the Board's decision. RCN now appeals to this court, raising four issues for our review.[9]

■ RCN first argues that the trial court erred in concluding that this matter was not required to be referred to arbitration pursuant to the terms of the Agreement.[10] RCN maintains that, because the parties have a valid agreement to arbitrate and because the matter of a breach of the Agreement is within the scope of the Agreement's arbitration provision, this controversy must be arbitrated. RCN further maintains that, nowhere in its counsel's letter dated December 20, 2001, did RCN waive its right to arbitration.[11]

System is not provided, installed and/or activated. (Board's Conclusions of Law, No. 10.) Additionally, pursuant to Section 12.4(A)(6) of the Agreement, the Township is entitled to $500.00 per day for each day all other material violations continue; RCN's failure to complete the Institutional Network is a material violation. (Board's Conclusions of Law, No. 11.) The Board further concluded that the Township was entitled to liquidated damages from December 2002, the month RCN was required to complete and activate the Cable System, through December 2008, the end of the initial term of the Agreement. (Board's Conclusions of Law, No. 12.)

8. The trial court did not address the issues regarding the stay or RCN's constitutional rights.

9. Where, as here, a complete record is developed before the local agency, our scope of review is limited to determining whether constitutional rights were violated, whether there was an error of law or violation of agency procedure and whether necessary findings of fact are supported by substantial evidence. See Fetter v. Jersey Shore Area School District, 833 A.2d 332 (Pa.Cmwlth.2003); see also 2 Pa.C.S. § 754.

10. Section 19.1 of the Agreement provides:

**ARBITRATION MANDATORY.** Except as may be required by Federal, State, or local law, all claims, disputes and other matters in question arising out of, or relating to, this Agreement shall be submitted to arbitration. Arbitration may be initiated by either the [Township] or [RCN] by filing a written demand for arbitration by certified mail with the other party.
(R.R. at 132a.)

11. Although the trial court determined that a valid agreement to arbitrate existed between the parties, the trial court concluded that the dispute was not within the scope of the arbitration provision. In doing so, the trial court specifically addressed the relationship between sections 12.3 and 19.1 of the Agreement. The trial court noted section 19.1 makes arbitration mandatory "[e]xcept as may be required by Federal, State or local law" and, thus, concluded that arbitration was not applicable to all situations. The trial court concluded that, by notifying the Township in the manner specified in section 12.3 of the Agreement/Ordinance and declaring its intention to dispute the allegations at a hearing, RCN laid its claims before local agency law to resolve the dispute; RCN's affirmative acts of contesting the Township's allegation fall within the exception to arbitrate. (Trial ct. op. at 5–9.)

Even if this court were to accept RCN's position that this matter falls within the scope of the Agreement's arbitration provision, RCN still cannot prevail because, contrary to RCN's claim, RCN has waived its right to exercise the Agreement's arbitration provision.

■■■ The right to enforce an arbitration clause can be waived. *Highmark Inc. v. Hospital Service Association of Northeastern Pennsylvania,* 785 A.2d 93 (Pa.Super.2001), *appeal denied,* 568 Pa. 720, 797 A.2d 914 (2002).

> Waiver is a voluntary and intentional abandonment or relinquishment of a known right.... Waiver may be established by a party's express declaration or by a party's undisputed acts or language so inconsistent with a purpose to stand on the contract provisions as to leave no opportunity for a reasonable inference to the contrary.

*Moscatiello Construction Company v. Pittsburgh Water and Sewer Authority,* 167 Pa.Cmwlth. 508, 648 A.2d 1249, 1251 (1994) (*quoting Samuel J. Marranca General Contracting v. Amerimar,* 416 Pa.Super. 45, 610 A.2d 499, 501 (1992)), *appeal denied,* 540 Pa. 608, 655 A.2d 995 (1995).

In *Moscatiello,* we adopted the superior court's reasoning set forth in *Marranca,* wherein the court held that a defendant is precluded on the ground of waiver from pursuing arbitration once it has taken the first steps in accepting the judicial process. In *Marranca,* the court concluded that defendant Amerimar's conduct amounted to waiver because:

> Amerimar chose not to file a petition to compel arbitration. Amerimar also elected not to assert arbitration as an affirmative defense either in preliminary objections or in new matter. Instead, Amerimar waited until it had received an adverse ruling on pretrial motions before invoking and seeking to enforce the arbitration provision of the contract. Further, Amerimar initiated other proceedings in different jurisdictions regarding matters related to the contract. This conduct is inconsistent with Amerimar's present contention that the arbitration provision is mandatory and not elective.

> . . . .

> Amerimar had every opportunity to raise and pursue the issue of arbitration but failed to do so. Amerimar cannot avail itself of the judicial process and then pursue an alternate route when it receives an adverse judgment. To allow litigants to pursue that course and thereby avoid the waiver doctrine and our rules of court is to advocate judicial inefficiency; this we are unwilling to do.

*Moscatiello,* 648 A.2d at 1251–52 (*quoting Marranca,* 610 A.2d at 501).

Similarly, RCN waived its right to pursue arbitration because it accepted the judicial process. At no time prior to or during the hearing before the Board did RCN object to the hearing or raise the issue of arbitration. Indeed, RCN never requested arbitration, and it was not until RCN received an adverse ruling from the Board that RCN sought to invoke the arbitration provision of the Agreement. Like Amerimar in *Marranca,* RCN had every opportunity to raise and pursue arbitration but failed to do so. RCN cannot avail itself of the judicial process under local agency law and then attempt to pursue an alternate route when it receives an adverse judgment. *See Moscatiello; Marranca.* Accordingly, the trial court did not err in failing to refer this matter to arbitration.

■■■ RCN next argues that the Township's imposition of damages, which RCN characterizes as "penalties," against RCN violates the Cable Communications Policy

Act of 1984 [12] (Cable Act). RCN maintains that "section 545" of the Cable Act,[13] 47 U.S.C. § 545, grants cable operators the right to have certain franchise requirements modified if the commercial impracticability of those requirements can be demonstrated. Pointing out the supremacy of federal law, and relying on *Tribune–United Cable of Montgomery County v. Montgomery County, Maryland,* 784 F.2d 1227 (4th Cir.1986),[14] RCN argues that, because it sought to modify the Agreement, the Cable Act required the Board to automatically stay the imposition of "penalties" until the franchising authority heard and decided the merits of RCN's application for modification. RCN maintains that the Board erred by refusing to consider RCN's evidence regarding its request for modification of the Agreement and by failing to stay the imposition of "penalties."

The Township counters that the Cable Act does not provide for an automatic stay, and, consequently, RCN had to make a motion to stay the hearing or the enforcement remedies, which RCN did not do. The Township maintains that, because RCN's request for modification was never properly presented to the Board, the Board was not required to stay the imposition of damages. We agree with the Township on this narrow procedural issue.

In doing so, we recognize that despite the fourth circuit's ruling in *Tribune–United,* there is no explicit language in the Cable Act providing for an automatic stay where modification is sought, and, in fact, the fourth circuit acknowledged this in its opinion. *Tribune–United,* 784 F.2d at 1230–31. Additionally, we are persuaded by and choose to adopt the apparent position of the United States District Court for the Eastern District of Pennsylvania (District Court) that the Cable Act does *not* provide for an *automatic* stay based upon the mere submission of a modification application.[15] *Cf. Werner v. Plater–Zyberk,* 799 A.2d 776 (Pa.Super.) (stating that, absent a United States Supreme Court pronouncement on an issue, federal court decisions are not binding on Pennsylvania state courts, but it is appropriate for this court to follow Third Circuit precedent in preference to that of other jurisdictions),

**12.** 47 U.S.C. §§ 521–573.

**13.** In its brief, RCN refers to this as section 545 of the Cable Act; however, it is really section 545 of Title 47 of the United States Code and section 625 of the Cable Act, Act of June 19, 1934, *added by* section 2 of the Act of October 30, 1984, Pub.L. 98–549.

**14.** In *Tribune–United,* the fourth circuit held that, "short of a bad faith or frivolous application for modification … [an] application [for modification] automatically stays any action on the part of the franchising authority to enforce the penalty provisions of the franchise agreement until its decision has been finalized." *Tribune–United,* 784 F.2d at 1231.

**15.** The Board denied RCN's modification request on August 28, 2002, after which RCN filed a complaint in the District Court, requesting declaratory and injunctive relief. RCN sought, *inter alia,* to stay the related state court proceedings, i.e., the appeal from the Board's decision awarding damages to the Township for RCN's breach of the Agreement that was then pending before the trial court. Subsequently, the Township filed a motion to dismiss RCN's District Court action and also asked the District Court not to stay the state court proceedings. The District Court denied the Township's motion to dismiss. Nevertheless, with regard to RCN's request for a stay, the District Court acknowledged that *"upon an appropriate motion* to the appropriate court, a stay of the Bucks County litigation may be plausible pursuant to the *Montgomery County* [*Tribune–United*] decision." *RCN Corporation and RCN v. Newtown Township,* (No. Civ.A. 02–CV–9361, E.D. Pa., filed May 7, 2003) (emphasis added). From this it is fair to conclude that, while the District Court apparently recognized a *possible* right to a stay, it took the position that mere submission of a modification application will not give rise to an automatic stay.

*appeal denied,* 569 Pa. 722, 806 A.2d 862 (2002).

■ In fact, where, as here, there is no express language, either in the statute or in our rules of civil procedure, providing for an automatic stay, the proper and sounder procedure is for a party to make a motion, or petition, for a stay and, in turn, prove its entitlement to a stay.[16] Appropriately, this places the burden on the moving party and also serves to give the non-moving party notice and an opportunity to defend against the grant of a stay.[17] Additionally, when a motion for a stay is filed, this alerts the adjudicating tribunal that a party seeks to stay the proceedings, or part of the proceedings, before it. Here, RCN merely delivered a letter to the Township Manager requesting modification of the Agreement on the afternoon of the day of the hearing before the Board. Clearly, this was insufficient notice to the Board that RCN sought to stay the pro-

ceedings, or part of the proceedings, before it. For all these reasons, we agree with the Township that the Board did not err in failing to grant RCN an automatic stay on the imposition of damages pending decision on RCN's request for modification.

■ This brings us to RCN's next argument, that the Board's imposition of damages was not supported by substantial evidence where the Township made no showing of its anticipated or actual damages. The trial court, however, concluded that the damage award was appropriate because it was made pursuant to an enforceable liquidated damages provision of the Agreement. We agree with the trial court.

Parties to a contract may include a liquidated damages provision which ensures recovery in cases where the computation of actual damages would be speculative. Such clauses are enforceable provided

16. *Cf. Pennsylvania Public Utility Commission v. Process Gas Consumers Group,* 502 Pa. 545, 467 A.2d 805 (1983) (holding that the grant of a stay pending appeal is warranted if the petitioner makes a strong showing that he is likely to prevail on the merits, the petitioner has shown that without the requested relief he will suffer irreparable injury, the issuance of a stay will not substantially harm other interested parties in the proceedings, and the issuance of a stay will not adversely affect the public interest); Pa. R.C.P. No. 4013 (stating the filing of a motion for a protective order does not automatically stay any or all proceedings in the action, but the court for good cause shown may stay any or all proceedings); Goodrich Amram 2d § 3121:2 (2001) (stating that, generally, a party seeking a stay of execution under Pa. R.C.P. No. 3121 must file an application for relief with the court).

17. In *Tribune–United,* the fourth circuit observed that "section 544(c)" of the Cable Act addresses the enforcement rights of a franchising authority and states that such enforcement rights are "subject to" the modification provisions of section 545 of the Cable Act. *Tribune–United,* 784 F.2d at 1230. The court reasoned that "[i]t would make little sense . . .

for Congress to subordinate the [franchising authority's] enforcement power to the [Cable] Act's modification procedures but at the same time to permit the [franchising authority] to enforce the very obligations sought to be modified." *Id.* However, we note that, section 545 of title 47, to which the franchising authority's enforcement power is subject, permits modification of a franchise agreement only when the modification relates to "facilities," "equipment" and "services," provided the cable operator can demonstrate the commercial impracticability of those requirements. 47 U.S.C. § 545(a)(1)(A) & (B). Consequently, because a modification may be had only in very limited circumstances, it would make little sense to say that the mere filing of *any application for modification* would automatically stay enforcement proceedings, especially where, as here, and unlike *Tribune–United,* the parties disagree as to whether RCN's modification proposal falls within the purview of 47 U.S.C. § 545. Therefore, although RCN *may* have a *right to a stay* under the Cable Act, it needs to demonstrate that it may exercise that right.

that, at the time the parties enter into the contract, the sum agreed to constitutes a reasonable approximation of the expected loss rather then [sic] an unlawful penalty.

*Carlos R. Leffler, Inc. v. Hutter,* 696 A.2d 157, 162 (Pa.Super.1997). In determining whether a damages stipulation is an unenforceable penalty or a valid liquidated damages provision, courts consider

the intention of the parties, drawn from the words of the whole contract, examined in the light of its subject-matter and its surroundings; and in this examination we must consider the relation which the sum stipulated bears to the extent of the injury which may be caused by the several breaches provided against, the ease or difficulty of measuring a breach in damages, and such other matters as are legally or necessarily inherent in the transaction.

*Hanrahan v. Audubon Builders, Inc.,* 418 Pa.Super. 497, 614 A.2d 748, 750 (1992) (quoting *March v. Allabough,* 103 Pa. 335, 341 (1883)).

In its well-reasoned discussion of the issue, the trial court stated:

The value that Newtown Township would derive had RCN performed under the Agreement is difficult to determine. The Township anticipated that RCN's cable system would spur economic development, create new jobs, and increase its tax base. The fact that the parties contemplated this potential is obvious and makes an exact determination of the harm sustained difficult to calculate....

The Board of Supervisors' Conclusions of Law demonstrate that RCN failed to comply with the Agreement....

The Board properly addressed whether the record contained information sufficient to make a legal conclusion that the liquidated damages are appropriate and not a penalty. The Agreement con-

tained a detailed, specific provision for when liquidated damages would be available and how they are calculated. The parties are permitted to do so in a case such as this because damages are difficult to quantify precisely.

After concluding that RCN did commit an anticipatory repudiation and a material breach of the Agreement, the Board set about applying the liquidated damages provision. "Pursuant to Section 12.4(3) of the Agreement, the Township is entitled to damages in the amount of $500.00 per day that the Cable System is not provided, installed and/or activated for RCN's failure to complete construction and/or fully activate the cable system in accordance Section 6 of the Agreement." The Board of Supervisors concluded that the Township is entitled to liquidated damages from December 2002, the month in which RCN was required to complete and activate the cable television system, through December, [sic] 2008, the end of the initial term of the [A]greement. The Board found that December 16, 2002, was the deadline set for the completion of construction and full activation of the cable television system. Thus, the Board set December 16, 2002, as the beginning date for calculating liquidated damages.

"Pursuant to Section 12.4(6) of the Agreement, the Township is entitled to $500.00 per day for each day all other material violations of the Agreement continue. By failing to complete [an] Institutional Network, RCN violated section 25 of the Agreement and in doing so committed a material violation of the Agreement." The Board concluded that the Township's damages for RCN's failure to complete an Institutional Network for the period beginning December 16, 2002[,] are $1,096,000.00.

The total liquidated damages owed by RCN are $2,192,000.00.

The Board calculated liquidated damages from December 16, 2002, ... through December 2008.... This calculation reflects an accurate appraisal of the damages as established by the Agreement.

(Trial ct. op. at 11–13) (footnotes omitted). Adopting this analysis, we conclude that the damage award is appropriate and proper under the Agreement.

Finally, RCN argues that its due process rights were violated by the imposition of a penalty that had no relation to any harm suffered. Because the Board's award was not a penalty, but rather was in the form of liquidated damages, RCN cannot prevail on this issue.[18]

Accordingly, based on the foregoing, we affirm the trial court order upholding the Board's award of damages.

### ORDER

AND NOW, this 7th day of May, 2004, the order of the Court of Common Pleas of Bucks County, dated July 2, 2003, is hereby affirmed.

---

18. In making this argument, RCN also asserts that its procedural due process rights were violated because the Board was not impartial. RCN did not raise this argument before the trial court and, thus, has waived it. (*See* R.R. at 200a, 201a.)